### In the United States District Court
### for the Eastern District of Pennsylvania

JEFFREY PODELL,

    Plaintiff,

       v.

LLOYD J. AUSTIN III, et al.,

    Defendants.

No. 22-cv-3505

### Memorandum of Law in Support of Defendants' Motion to Transfer Venue and for Partial Dismissal

There are two overarching deficiencies with plaintiff Jeffrey Podell's Second Amended Complaint: 1) it was filed in the wrong district, in violation of Title VII's venue provision; and 2) it contains numerous superfluous and legally deficient variations on the same principal religious discrimination claim.

The Eastern District of Pennsylvania is not a permissible venue under Title VII. No unlawful employment practice allegedly occurred in Pennsylvania; Podell would not have been employed in this district but for an alleged discriminatory employment practice; and the National Geospatial Intelligence Agency (the "NGA") does not maintain any employment records or offices in this district. Podell's cause of action arose in Springfield, Virginia; the related witnesses and evidence are located primarily at the NGA's facilities in Springfield; and defendants are primarily located in the Eastern District of Virginia. Accordingly, the case should be transferred to the Eastern District of Virginia.

Substantively, the crux of plaintiff Jeffrey Podell's claims is that the National Geospatial Intelligence Agency ("NGA"), during its hiring process, failed to reasonably accommodate Podell's religion by offering qualification testing to him on a day other than Saturday. Podell claims this failure to accommodate violated Title VII; Defendants have no objection to this claim proceeding in an appropriate forum against the Secretary of Defense in his official capacity, the only permissible defendant under Title VII.

Instead of focusing his complaint on this straightforward failure-to-reasonably-accommodate-in-hiring claim, Podell includes variations on the same facts under different legally deficient theories, and against numerous improper defendants named in their official capacities. These extraneous claims should be dismissed now so that, when the case is transferred to an appropriate venue, the parties and the Court can focus on the plausibly-stated claims for relief—claims under Title VII based on an alleged failure to reasonably accommodate Podell's religious beliefs in the hiring process.

Defendants[1] therefore respectfully move to dismiss certain claims and transfer the remaining claims to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).

---

[1] In their official capacities, Secretary of Defense Lloyd Austin III, Director of the National Geospatial Intelligence Agency (the "NGA") Frank D. Whitworth III, NGA Chief of Police Frank Kenney, NGA Assistant Chief of Police Richard Weiss, NGA Major of Police Jason Tinnin, NGA Lieutenant of Police Wesley Lee Jordan, NGA Lieutenant of Police Marcus Dwayne Jackson, NGA Lieutenant of Police Jesse

## I.      Allegations of the Complaint and Procedural History[2]

Plaintiff's Second Amended Complaint ("SAC") arises from his application to the NGA in April 2021. SAC ¶ 39. On April 23, 2021, Plaintiff Jeffrey Podell applied to four NGA Police Officer positions "available for the Springfield, Virginia and St. Louis, Missouri locations via the Intelligence Community's online careers portal." *Id.* On June 9, 2021, Podell received an email asking him to complete "the first phase of pre-employment processing." *Id.* ¶ 40. Podell replied by email that "he could not attend the pre-employment processing event because the event was scheduled to take place on a Saturday." *Id.* ¶ 41.

On June 28, 2021, Podell received an email from a different address "inviting him to participate" in pre-employment processing. *Id.* ¶ 44. Podell replied that he was "unable to attend . . . because it conflicted with Plaintiff's observance of the Jewish Sabbath." *Id.* ¶ 45.

On July 14, 2021, the NGA notified Podell that "they would consult their Human Resources (HR) apparatus about alternative testing dates." *Id.* ¶ 46.

On August 20, 2021, Podell sent an additional email to the NGA reiterating his status as a "Sabbath observant Jew" and his requests for an alternate testing date. *Id.* ¶ 46. On September 9, 2021, Podell received an email indicating that

---

McNeil, NGA Lieutenant of Police Marcel Young, and NGA Corporal of Police Larence Dublin.

[2] The allegations of plaintiff's complaint are accepted as true for purposes of this motion, except insofar as they conflict with the attached declaration of Jack Rickert for purposes of the Court's venue determination. *See infra* III.A.

testing for the Police Officer position would be limited to Saturdays in 2021. *Id*. ¶ 49.

On September 28, 2021, Podell received two emails from the NGA indicating that his "application was reviewed," but "he was not selected" for two of the Police Officer positions. *Id*. ¶ 50.

Podell then pursued an EEO informal complaint process. *Id*. ¶¶ 51–64; *see also* Ex. B. And, on January 10, 2022, Podell filed a formal complaint with NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity. *Id*. ¶ 65; *see also* Ex. C & D. Podell pursued this formal complaint, including participating in avenues of discovery, through July 8, 2022, when he received the investigative file. *Id*. ¶¶ 66–192.

On September 1, 2022, with more than 180 days having elapsed since the filing of his formal complaint without final action, Podell filed a complaint in the Eastern District of Pennsylvania alleging discrimination by the NGA and its employees in violation of Title VII of the Civil Rights act of 1964, as well as other putative claims. Podell amended this complaint twice and the Second Amended Complaint is now the operative complaint.

## II. This Court lacks venue and should transfer the matter to the Eastern District of Virginia.

### A. In ruling on a Rule 12(b)(3) motion, a court may only accept venue allegations as true if uncontradicted by defendants' affidavits.

As in a Rule 12(b)(6) motion, a court considering a motion to dismiss or transfer for improper venue under Rule 12(b)(3) should generally accept the allegations in the complaint as true. However, that is true "only to the extent that such facts are uncontroverted by defendant's affidavit." *See Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (quoting *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)). A district court may examine facts outside the complaint to determine whether venue is proper. *E.g., Holiday v. Bally's Park Place, Inc.*, 2007 WL 2600877, *1 (E.D. Pa. 2007). Accordingly, the attached declaration of NGA Assistant General Counsel Jack Rickert, with attached vacancy announcements, is appropriately considered for purposes of resolving the venue motion. *See* Ex. A (Rickert Decl.).

### B. Title VII contains an exclusive venue provision that limits venue to certain forums.

Venue must generally be established for each claim in the complaint. *See, e.g., Weaver v. Walgreen Co.*, 2021 WL 698206, *2 (E.D. Pa. 2021). Although Podell erroneously cites the general venue statue 28 U.S.C. § 1391 (SAC ¶ 18), Title VII contains an exclusive venue provision, rendering § 1391 inapplicable. *Id.* Thus, venue is only proper if one of the grounds in Title VII's venue provision, 42 U.S.C.

§ 2000e-5(f)(3), is satisfied. In particular, venue is proper in a Title VII action in three possible forums: (1) any judicial district in the state in which the unlawful employment practice is alleged to have been committed; (2) the judicial district in which the employment records relevant to such practice are maintained and administered; or (3) the judicial district in which the aggrieved employee would have worked but for the unlawful employment practice. 42 U.S.C. § 2000e-5(f)(3).

### C.   Venue is improper in the Eastern District of Pennsylvania.

Venue is improper in the Eastern District of Pennsylvania because none of the section 2000e-5(f)(3) requirements is satisfied.

First, the NGA does not store records in this District. *See* Rickert Decl. ¶¶ 5–6. Podell's conclusory allegation that "[i]t is believed and therefore averred that some or all of the records relevant to the challenged practice are maintained, utilized and administered in the Eastern District of Pennsylvania," SAC ¶ 21, is not sufficient to defeat the NGA's sworn declaration that it does not maintain records in Pennsylvania. *See Bockman*, 459 F. App'x at 158 n.1 ("We accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits.")

Second, Podell would not have worked in Pennsylvania had he obtained the NGA Police Officer position for which he applied. *See* Rickert Decl. ¶ 7; *see also* SAC ¶ 39 (alleging Podell applied to vacancy announcements for Springfield, Virginia and St. Louis, Missouri locations); SAC ¶ 50 (alleging that pending application was

for position in Springfield, Virginia). Podell's conclusory allegation that he "may have worked within the Eastern District of Pennsylvania for one or more Defendants, a subject not knowable at this time," similarly does not rebut the NGA's sworn declaration to the contrary. *Bockman*, 459 F. App'x at 158 n.1. NGA's declarant explains that NGA does not have any branches, offices, or facilities in Pennsylvania at all. Rickert Decl. ¶ 4. Further, Podell's desired job as a Police Officer required an on-site presence. *See* Rickert Decl. ¶ 7; *see also* Ex. A to Rickert Decl. (Vacancy Announcements listing "duty stations" as St. Louis, Missouri or Springfield, Virginia, and describing various duties that self-evidently could only be performed on location, such as responding to emergencies, conducting patrols, conducting searches, carrying firearms, etc.).

Finally, no alleged unlawful employment practice occurred in Pennsylvania. *See* Rickert Decl. ¶ 8. The NGA officials involved in Podell's hiring decision and whether to offer an alternative testing date were located in NGA facilities in either Springfield, Virginia, or St. Louis, Missouri. *Id.* Podell affirmatively alleges that the pre-employment testing in which he was invited to participate was to take place in Springfield, Virginia. SAC ¶¶ 44, 46, 47.

Podell suggests that because he participated in remote interviews during the Covid-19 pandemic while residing in Pennsylvania, and otherwise was "contacted" by relevant parties while at his residence, an employment practice occurred in Pennsylvania. *Id.* ¶¶ 22–23. These allegations appear to mean nothing more than

he participated in video, phone, and email communications relating to the hiring process from his home in Pennsylvania. There is no allegation that any NGA employee travelled to Pennsylvania or took any actions at all in Pennsylvania.

To determine where an unlawful employment practice occurred, courts apply a "commonsense appraisal" of events having operative significance. The inquiry focuses on the locus of the alleged discrimination, and courts must look to "the place where the *decisions* and *actions* concerning the employment practices occurred." *Calobrisi v. Booz Allen Hamilton, Inc.*, 58 F. Supp. 3d 109, 112 (D.D.C. 2014) (internal quotations omitted) (emphasis in original). "Instead of looking to where the worker is located, when determining where an alleged unlawful employment practice was committed, the Court must look to the place where the decisions and actions concerning the employment practices occurred.'" *Osborne v. AECOM*, 2019 WL 13082170, *4 (W.D. Tex. 2019).

The location of Podell's participation in remote video conferences, phone calls, or emails is not relevant for venue purposes. Unlawful employment practices occur where the decisions or acts of an *employer* occur. "[T]he cause of action follows the place where the decisions were made, not the place where the employee was or is found." *Osborne*, 2019 WL 13082170, *4. *See also Shahin v. Geithner*, 2012 WL 2126906, at *4 (D. Del. 2012) (granting a motion to transfer venue where "[p]laintiff was notified on March 13, 2010, via email, that she was 'found to be ineligible . . . [for] this position'" because the hiring decision was made in Massachusetts and

8

Washington, DC); *Carrothers v. Noblestar Systems Corp.*, 2006 WL 734347, *2 (S.D. Tex. 2006) ("Plaintiffs essentially rely on the fact that the alleged wrongful harassment and retaliation were communicated to Carrothers while she lived in Galveston. This is not sufficient to confer venue pursuant to the first prong of 42 U.S.C. § 2000e-5(f)(3).").

Courts across the country apply identical reasoning in the retaliatory termination context. *See, e.g., Moore v. City of Kankakee*, 2015 WL 2455116, at *1 (N.D. Ill. 2015) ("The plain language of [the] prong focuses on 'the place where the decisions and actions concerning the employment practices occurred,' not the location where a plaintiff received notice of the Defendant's conduct or suffered from its effects.") (internal citations omitted); *Reid v. D.P. Curtis Trucking, Inc.*, 2012 WL 5409786, at *2 (D.N.M. 2012) (rejecting the proposition that "a termination occurs in the state where the employee resides and where he receives the news of his termination via a phone call[.]").

Holding otherwise would render online job applications unworkable—employers would be hauled into faraway courts where they have no connection. *See Moore*, 2015 WL 2455116, at *2 ("[T]aken to its logical extreme, his notice argument would create venue anywhere where a plaintiff received a termination phone call or email"). This appears to be Podell's argument, and the Court should reject it.

A court that lacks venue may dismiss the complaint, or transfer the case "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C.A. §

1404(a). The Eastern District of Virginia is the appropriate forum for Podell's

employment claims because the following are located there: (1) the Springfield

facility to which Podell applied; (2) most of the relevant NGA employee witnesses;

and (3) relevant documents related to NGA employment decisions. Accordingly,

factors relevant to section 1404(a) favor transfer to that district.

## III.   The Court should dismiss Counts 3 through 8.

### A.   Standards on a motion to dismiss for failure to state a claim under Rule 12(b)(6).

A federal court must dismiss an action for failure to state a claim on which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6) if the complaint

fails to plead enough facts to state a claim for relief that is plausible on its face. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *W. Run Student Hous. Assocs.,*

*LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013); *Phillips v. County*

*of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir.

2011).

Although a court must accept as true the factual allegations of a complaint,

that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* Accordingly, when deciding a motion to dismiss,

district courts in this Circuit are instructed: first, to "outline the elements a plaintiff must plead to state a claim for relief"; second, to "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and finally, to "look for well-pled factual allegations, assume, their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted).

While the Court generally may not consider matters extraneous to the pleadings when ruling on a Rule 12(b)(6) motion, the Court may consider documents integral to, or explicitly relied upon, in the pleadings without converting the motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This includes, with respect to the question whether Podell met Title VII's precondition for filing by exhausting his claims, Podell's EEO complaints, which are relied on in the complaint. *See* Exs. B, C, D; *see also* SAC ¶¶ 53, 55.

**B.    Podell's Constitutional claims (Counts 4, 5, and 6) are preempted by Title VII.**

In *Brown* v. *General Services Administration*, 425 U.S. 820, 829 (1976), the Supreme Court held that Title VII's comprehensive remedial scheme provides the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *See also Francis v. Mineta*, 505 F.3d 266, 271 (3d Cir. 2007) ("Title VII is the 'exclusive, pre-emptive administrative and judicial scheme

11

for the redress of federal employment discrimination.'") (quoting *Brown*, 425 U.S. 820).

Under *Brown,* Podell's claims of constitutional violations based on the same allegations underlying his Title VII claim are therefore preempted by Title VII. *See Owens v. United States*, 822 F.2d 408, 410 (3d Cir. 1987) ("Title VII provides federal employees a remedy that 'precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation'") (collecting cases). Accordingly, Counts 4 (due process), 5 (equal protection), and 6 (free exercise) must be dismissed.

### C.    Third Circuit law precludes Podell's RFRA claim (Count 8).

Regarding Podell's RFRA claim, in *Francis*, the Third Circuit relied on *Brown* to conclude that federal employees may not bring religious employment discrimination claims based on RFRA. *Francis*, 505 F.3d at 271. This decision remains binding on this Court and therefore this Court is bound to conclude that Podell may not bring a religious employment-discrimination claims based on RFRA. *See United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 155 (3d Cir. 2005) (stating that courts must follow the case that directly controls, leaving to the reviewing court the prerogative of overruling its own decisions).

However, the government, exercising its duty of candor, notes that the Supreme Court has more recently called RFRA a "super statute" that "displac[es] the normal operation of other federal laws" and suggested (albeit in the context of

an employer's defense to liability) that RFRA "might supersede Title VII's commands in appropriate cases." *Bostock* v. *Clayton County*, 140 S. Ct. 1731, 1754 (2020); see 42 U.S.C. 2000bb-3(a) (stating that RFRA applies to "all Federal law, . . . whether adopted before or after" RFRA's enactment).

In light of these developments, the government now generally maintains that federal employees may rely on RFRA for religious employment-discrimination claims. *See*, *e.g.*, Gov't Br. in Opp. Cert. at 17–18, *Groff v. DeJoy*, No. 22-174 (S. Ct. Nov. 28, 2022). However, in this Circuit, as noted above, district courts remain obliged to follow *Francis* unless and until the Court of Appeals or the Supreme Court specifically overrules that decision.

## D.   Podell has not exhausted and does not state a hostile work environment claim (Count 7).

### 1.   Podell failed to exhaust a hostile work environment claim.

Failure to exhaust administrative remedies under Title VII is grounds for dismissal on a Rule 12(b)(6) motion. *Robinson v. Dalton*, 107 F.3d 1018, 1020–22 (3d Cir. 1997). "A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [] for conciliation or resolution." *Robinson*, 107 F.3d at 1022 (quoting *Hornsby v. United States Postal Service*, 787 F.2d 87, 90 (3d Cir. 1986)). The test for exhaustion of administrative remedies is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope

of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

Podell did not raise a "hostile work environment" claim in the EEO proceedings. His informal and formal complaints raise claims based on four instances of a failure to make a religious accommodation, and his ultimate non-selection for hiring as an NGA Police Officer. *See* Exs. B & C. Further, the NGA's Office of Diversity, Inclusion, and Equal Opportunity accepted those five claims, and only those five claims, for investigation. *See* Ex. D (Letter dated Feb. 3, 2022 at 2).

Accordingly, because Podell made no reference to a hostile work environment claim in the EEO proceedings, and did not provide facts supporting a finding of hostile work environment, Podell failed to exhaust any claim for a hostile work environment and the claim should be dismissed. *See, e.g., Barzanty v. Verizon Pennsylvania, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010) (affirming dismissal of hostile work environment claim when EEO charge complained only of general discrimination relating to discharge and contained no language suggesting an abusive atmosphere or hostile work environment); *Ocasio v. City of Bethlehem*, 2009 WL 37518, *4 (E.D. Pa. 2009) (dismissing hostile work environment claim for failure to exhaust because facts in EEO charge were insufficient to support hostile work environment claim).

2. **Podell does not state a hostile work environment claim.**

Even if the Court were to consider Podell's hostile work environment claim as exhausted, the Second Amended Complaint does not plead a viable claim. It should be dismissed.

"Under Title VII, a hostile work environment exists 'when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.''" *Starnes v. Butler Cty. Ct. of Common Pleas*, 971 F.3d 416, 428 (3d Cir. 2020) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). While conduct alleged to have occurred outside the work environment may be considered when assessing a hostile work environment claim, such actions "cannot in themselves, give rise to such a claim; what matters in the end is plaintiff's *work* environment." *Paola v. DeJoy*, --- F. Supp. 3d ---, 2022 WL 4002206, *9 (W.D.N.Y. 2022) (quoting *Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 90–91 (W.D.N.Y. 2021)).

Podell attempts to state a hostile work environment claim based on NGA's decision not to offer an alternative pre-employment testing date. *See* SAC ¶¶ 264–72. Podell does not allege that his "workplace" was permeated with discrimination, as required to plead a hostile environment claim, because Podell never worked at NGA. *See, e.g., Peace-Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir. 2010) ("[T]o prove her hostile work environment claim, Peace–Wickham must show, inter alia,

that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.") (internal citation omitted). Accordingly, Podell cannot and does not make factual allegations supporting an inference that there was workplace conduct "so severe or pervasive as to constitute an objective change in the conditions of employment." *Komis v. Sec'y U.S. Dep't of Labor*, 918 F.3d 289, 293 (3d Cir. 2019).

Further, NGA's isolated decision not to offer an alternative testing date does not rise to the level of a hostile work environment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The allegations supporting Podell's putative hostile environment claim are indistinguishable from those in his disparate treatment claim—they are properly addressed in that context. *Cf. Abdul Haqq v. Pa. Dep't Pub. Welfare*, 2010 WL 6808311, n.9 (E.D. Pa. 2010) ("[S]everal District Courts have cautioned against blurring the lines between [disparate treatment and hostile work environment] causes of action.") (collecting cases).

### E.   Podell's retaliation claim (Count 3) should be dismissed.

#### 1.   Podell failed to exhaust a claim for retaliation.

As noted above, a plaintiff fails to state a claim under Title VII if he has not exhausted the specific claim advanced in the complaint. *See supra* III.D.1.

Podell's informal and formal EEO complaints raised four specific claims based on a failure to make a religious accommodation with respect to the pre-employment screening test date, and a fifth claim based on a failure to select him for the Police Officer position. In his formal complaint of discrimination, Podell notably did not check "Reprisal for Previous EEO Activity" as a reason why Podell believed he was discriminated against. Ex. C at 1, Section 8. Nor did Podell give any indication that he raised a retaliation claim in his informal complaint. Ex. B. And the NGA's letter accepting his claims for investigation similarly gives no indication it understood Podell as raising a retaliation claim. Ex. D.

Accordingly, Podell has failed to exhaust any claim for retaliation and the putative retaliation claim must be dismissed. *See, e.g., Hewitt v. BS Transportation of Illinois, LLC*, 355 F. Supp. 3d 227 (E.D. Pa. 2019) (concluding that retaliation claim was not fairly within the scope of EEOC Complaint when EEOC charge left the box for retaliation unchecked, only mentioned "retaliation" twice, and averred no facts supporting a claim of retaliation); *Johnson v. Chase Home Finance*, 309 F. Supp. 2d 667, 671–72 (E.D. Pa. 2004).

2.   **Podell's retaliation claim should also be dismissed because Podell fails to allege a causal relationship between protected conduct and an adverse personnel action.**

If the Court were to consider Podell's retaliation claim, notwithstanding Podell's failure to exhaust, the Court should dismiss it for failure to state a claim.

Federal employees may generally bring claims for retaliation even though the federal sector provision of Title VII does not explicitly reference retaliation. *See generally Komis v. Sec'y of U.S. Dep't of Labor*, 918 F.3d 289, 294 (3d Cir. 2019). Podell claims "retaliation" based on his allegation that whenever he made a request for alternative testing arrangements, it was subsequently denied, and Podell was consequently eliminated from consideration for employment. SAC ¶¶ 238, 243; *see also* ¶¶ 101, 136, 172 (alleging that testing was mandatory precondition to hiring). This "retaliation" claim is a transparent bootstrapping of a disparate treatment failure-to-accommodate claim.

For purposes of this motion, the government assumes that Podell's requests for accommodation constituted protected EEO activity, and that the alleged failure to accommodate constitutes a "personnel action" under 42 U.S.C. § 2000e-16(a).[3]

---

[3] Title VII's federal-sector provision speaks in terms of "personnel actions." In *Komis*, the Third Circuit declined to articulate precisely how that term relates to federal employee retaliation claims, or how it might differentiate federal-sector from private-sector claims. 918 F.3d at 295–96. That issue does not matter here, as Podell affirmatively alleges that the employment decision at issue—to offer the qualification testing only on Saturdays—was made prior to Podell's protected conduct.

However, Podell also must allege a causal connection between his protected conduct and a subsequent personnel action. *See, e.g., Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (noting requirement of causal connection between protected activity and adverse employment action); *Komis*, 918 F.3d at 299 (applying causation requirement in federal sector).

Under the allegations of the complaint, the NGA had already determined to hold its qualification test on Saturdays prior to Podell requesting otherwise (indeed that was the reason why Podell requested an accommodation). The NGA sticking with its decision on Saturday testing, even after Podell's requests for an accommodation, cannot be the basis of a retaliation claim because decisions made prior to protected conduct are insulated from retaliation liability. *See Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130, 137 (3d Cir. 2007) ("[A]s the Supreme Court has held, an employer need not refrain from carrying out a previously reached employment decision because an employee subsequently claims to be engaging in protected activity.") (citing *Clark County Sch. Dist. V. Breeden*, 532 U.S. 268, 272 (2001)). If every decision to decline accommodation could support a retaliation claim sufficient to survive a motion to dismiss, then employers would be "would be placed in a judicial straight-jacket not contemplated by Congress." *Id.* Podell's retaliation claim should be dismissed because he does not allege any *new* employment-related decision caused by his protected conduct. The

19

alleged failure to accommodate is appropriately addressed in the context of Podell's disparate treatment claim, not in a duplicative claim labeled as "retaliation."

## IV.  The Court should dismiss all defendants other than Secretary Austin.

Podell's only remaining claims are for disparate treatment and disparate impact under Title VII. The only proper defendant in a federal employee's Title VII action is the head of the appropriate agency. *See Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 Fed. Appx. 209, 213 (3d Cir. 2012) ("[T]he only proper defendant in a federal employee's Title VII action is the head of the appropriate agency."); 42 U.S.C. § 2000e-16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant"). Here, that is Secretary Austin, the Secretary of Defense.

All other defendants are sued in their official capacity, which is equivalent to suing the agency itself, and therefore superfluous. *See* SAC ¶¶ 3-14; *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotations omitted). With only the Title VII claims remaining, all counts against the individual defendants should be dismissed, with Secretary Austin, in his official capacity, remaining as the sole defendant in this action.

20

## V.     Conclusion

Defendants respectfully request that the Court dismiss Counts 3 through 8 as to all defendants; dismiss all defendants other than Secretary Austin from all remaining claims; and transfer the matter to the Eastern District of Virginia.[4]

Respectfully submitted,

Dated: December 19, 2022      JACQUELINE C. ROMERO
                              United States Attorney

                              /s Susan R. Becker for GBD
                              Gregory B. David
                              Assistant United States Attorney
                              Chief, Civil Division


                              /s Landon Y. Jones III
                              LANDON Y. JONES III
                              Assistant United States Attorney
                              615 Chestnut Street, Suite 1250
                              Philadelphia, PA 19106-4476
                              landon.jones@usdoj.gov
                              (215) 861-8323 (L. Jones Direct)
                              (215) 861-8618 (Fax)

---

[4] The Second Amended Complaint includes requests for declaratory and injunctive relief as Counts 9 and 10. Defendants construe these "Counts" as the relief requested, not independent causes of action. The Court need not address the requested relief at this time.