**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

JEFFREY PODELL,
       Plaintiff

    vs.

LLOYD J. AUSTIN III,
In his official capacity as Secretary of the
United States Department of Defense,
UNITED STATES DEPARTMENT OF
DEFENSE;

FRANK D. WHITWORTH III,
In his official capacity as Director of the National
Geospatial Intelligence Agency, NATIONAL
GEOSPATIAL INTELLIGENCE AGENCY;

FRANK KENNEY,
In his official capacity as Chief of Police,
National Geospatial Intelligence Agency
Police, NATIONAL GEOSPATIAL
INTELLIGENCE AGENCY POLICE;

RICHARD WEISS,
In his official capacity as Assistant
Chief Of Police, National Geospatial
Intelligence
Agency Police, NATIONAL GEOSPATIAL
INTELLIGENCE AGENCY POLICE;

JASON TINNIN,
In his official capacity as Major of
Police, National Geospatial Intelligence
Agency Police;

WESLEY LEE JORDAN,
In his official capacity as Lieutenant of
Police, National Geospatial Intelligence
Agency Police;

**CASE NO: 22-cv-3505**

**COMPLAINT FILED: 9/1/2022**

**JUDGE:** JOEL H. SLOMSKY

**JURY TRIAL DEMANDED**

MARCUS DWAYNE JACKSON,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency Police;

JESSE MCNEIL,
In his official capacity as Lieutenant of
Police, National Geospatial Intelligence
Agency Police;

MARCEL YOUNG,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency Police;

LARENCE DUBLIN,
In his official capacity as Corporal of Police,
National Geospatial Intelligence Agency Police;
                        Defendants


**<u>BRIEF IN OPPOSITION TO MOTION AND MEMORANDUM OF LAW
WITH RESPECT TO DEFENDANTS' MOTION TO TRANSFER VENUE
AND FOR PARTIAL DISMISSAL</u>**

# TABLE OF CONTENTS

1.    Introduction ............................................................................................... 1

2.    Factual Background .................................................................................... 5

3.    Argument ................................................................................................... 11

      3.1    Motion to Transfer Venue ............................................................. 11

             3.1.1   Legal Standard ................................................................... 11

             3.1.2   Venue is Proper in the Eastern District of Pennsylvania
                     Under Applicable Statutes .............................................. 12

             3.1.3   Case Law Regarding Venue in Employment Cases ..................... 16

      3.2    Government's Motion to Dismiss ............................................... 21

             3.2.1   Legal Standard ................................................................... 21

             3.2.2   Due Process, Equal Protection and First Amendment Free
                     Exercise Claims are not Preempted ................................ 23

             3.2.3   RFRA Claim ...................................................................... 28

             3.2.4   Exhaustion/Hostile Work Environment ........................... 30

             3.2.5   Retaliation ........................................................................ 32

             3.2.6   Dismissal of all Defendants other than Secretary Austin .............. 33


4.    Conclusion ................................................................................................ 34

TABLE OF AUTHORITIES

Cases

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) ..............................................................24

*Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ..................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ...21, 22

*Berg v. Aetna Freight Lines*, 2008 U.S. Dist. LEXIS 54905, at * 6 (E. D. Pa. July 14, 2008) 16, 18

*Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) .....................12, 17

*Bolling v. Sharpe*, 347 U.S. 497 (1954) .............................................................................26, 27

*Bostock v. Clayton County*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)....................................28

*Brown v. General Services Administration*, 425 U.S. 820, 96 S. Ct. 1961 (1976) ................25, 26

*Cox v. Nat'l Football League,* 1997 U.S. Dist. LEXIS 15307, *7, 1997 WL 619839, at *3 (N.D. Ill. 1997)..........................................................................................................................18, 19

*DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007) ....................................21

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ............................................................................22

*Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 U.S. Dist. LEXIS 23839, 2005 WL 2660351 (E.D. Pa. Oct. 18, 2005)..............................................................................................18

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ....22

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) .................................................22

*Francis v. Mineta*, 505 F.3d 266 (3d Cir. 2007) .......................................................................28

*Great W. Mining & Mineral Co. v. ADR Options, Inc.,* 434 F. App'x 83, 86 (3d Cir. 2011)..........11

*Healthcare Servs. Grp v. Skyline Servs. Grp.,* 2018 WL 637773, U.S. Dist. LEXIS at *14-*15 (E.D. Pa. Jan. 30, 2018) ........................................................................................................12

*Henley v. Brown*, 686 F.3d 634, 638 (8th Cir. 2012)....................................................24, 25, 26

*Holiday v. Bally's Park Place, Inc.*, 2007 WL2600877, 2007 U.S. Dist. LEXIS 66554 (E.D. Pa. Sept. 7, 2007) (Kauffman, J.).............................................................................................17, 18

*Johnson v. Railway Express Agency*, 421 U.S. 454, 459 (1975) ...............................................25

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) .....................21

*Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ................................................................21

*Kravitz v. Institute for Int'l Research,* 1993 U.S. Dist. LEXIS 15669, at *6-*7 (E.D. Pa. Nov. 3, 1993).....................................................................................................................................13

*Lannett Co. v. Asherman,* Civ. A. No. 13-2006, 2014 U.S. Dist. LEXIS 23501, 2014 WL 716699, at *3 (E.D. Pa. Feb. 24, 2014) .............................................................................................11, 12

*Manning v. Flannery,* Civ. A. No. 09-03190, 2010 U.S. Dist. LEXIS 1091, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010) ........................................................................................................11, 12

*Markowitz v. Northwest Land Co.*, 906 F. 2d 100, 103 (3d Cir.  1990).......................................21

*Mathias v. York Cnty.*, 2017 U.S. Dist. LEXIS 27409, *27 (M. D. Pa. Feb. 28, 2017)................21

*Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724-25, 19 V.I. 642 (3d Cir. 1982) ...........................11

*N. American Communs. Inc. v. Herman*, 2018 U.S. Dist. LEXIS 11815 (W. D. Pa. Jan. 25, 2018) ............................................................................................................................................19

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)21

*Phillips v. County of Allegheny*, 515 U.S. 224, 234 (3d Cir. 2008).............................................22

*Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998).................12, 17

*Singh v. Berger*, 2022 U.S. App. LEXIS 35562, ___F.4th ___, 2022 WL 17878825 (D.C. Cir. Dec. 23, 2022).................................................................................................................29

*Vinson v. Seven Seventeen HB Phila. Corp. No. 2,*  2001 U.S. Dist. LEXIS 25295, *101-102  (E. D. Pa. Oct. 31, 2001)..........................................................................................................13

*Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 Fed. Appx. 209, 213 (3d Cir. 2012) ..............33

*Weaver v. Walgreens, Inc.,* 2021 U.S. Dist. LEXIS 33144 *,   2021 WL 698206 (E.D. Pa. Feb. 23, 2021) ..............................................................................................................17, 20

## Statutes

28 U.S.C. § 1391(e)(1)..............................................................................................................13

28 U.S.C. Section 1391.............................................................................................................13

42 U.S.C. § 2000bb, *et seq.*....................................................................................................29

42 U.S.C. § 2000e-5(f)(3).......................................................................................12, 13, 16, 18

42 U.S.C. §§ 2000bb-2000bb-4...............................................................................................28

5 U.S.C. § 7151........................................................................................................................26

Section 1391(e)(1)(B)..............................................................................................................13

Title VII of the Civil Rights Act of 1964 .............................................................................12, 31

*Williams v. Pa. Human Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017)...............................26

## Other Authorities

§ 717 of the Civil Rights Act of 1964 .......................................................................................30

Religious Freedom Restoration Act..........................................................................................17

## Rules

Fed. R. Civ. P. 8(a)(2).............................................................................................................26

Federal Rule of Civil Procedure 12...........................................................................................20

Federal Rule of Civil Procedure 12(b)(3).................................................................................16

Federal Rule of Civil Procedure 12(b)(6)............................................................................26, 38

1.    **INTRODUCTION**

The Government's Memorandum of Law blithely ignores the substance of Plaintiff's action and fails faithfully to recite the facts set forth in the Complaint relevant to the presentation of the position espoused by Jeffrey Podell.

Defendants' brief characterizes this case as a "straightforward failure-to-reasonably-accommodate-in-hiring claim". Defendants' Memorandum of Law at page 2. Quite to the contrary, this case is about a standing policy by the United States of America through its constituent agencies to ignore, debase and marginalize observant members of the Jewish community who seek employment with agencies of the United States of America. It is no surprise that the Federal Government has essentially been tone-deaf to discrimination against the Jewish people, expressed in the failure reasonably to accommodate scenario and a variety of other contexts.[1]

Antisemitism has become so pervasive in the United States, that observant Jews are the primary target of violence with respect to expressions of discrimination against classes and groups of people.[2] While this case cannot possibly address all the discrimination faced by members of the Jewish community, it is an exemplar of the barriers and hurdles faced by observant members of the Jewish community in seeking employment, especially in connection with jobs traditionally not occupied by members of the Jewish faith.

---

[1] The White House, December 12, 2022, Statement from White House Press Secretary Karine Jean-Pierre on Inter-Agency Group to Counter Antisemitism, https://www.whitehouse.gov/briefing-room/statements-releases/2022/12/12/statement-from-white-house.

[2] Based on 2019 FBI data, Jews were 2.6X more likely than blacks and 2.2X more likely than Muslims to be victims of hate crimes, Perry, Mark J., July 6, 2021. https://www.aie.org/carpe-diem/based-on-2019-fbi-data-jews,were-to-6x-more-likely-than-blacks-... One in four American Jews say they experienced antisemitism in the last year, October 26, 2021 Hernandez, Joe. NPR. https://www.npr.org/2021/10/26/1049288223/1-in-4-american-jews-say-they-experienced-antisemitism...

A brief history of anti-Jewish behavior, especially in the work, employment and training context, is worth reciting.  The history of discrimination against Jewish communities in the United States dates back to the arrival of Portuguese Jews to New Amsterdam in 1654.  Following the Dutch West India Company's approval of Jewish immigration to New Amsterdam, Peter Stuyvesant adopted several different approaches to discourage Jews from permanent settlement.[3]

In either 1654 or 1655, Stuyvesant, "importuned the colonial council to bar Jews from serving in the volunteer home guards."  While this ban was eventually overturned after a two-year legal battle between Asser Levy, Joseph Barsimon and the colonial court, it represented one of the first instances of state-sanctioned discrimination against Jews serving in official positions.[4]

Following the Dutch capture of Swedish territory along the Delaware River, "Stuyvesant refused to issue trade permits to Jewish settlers in the new territory."  After protests by Jewish settlers against these harmful restrictions, Stuyvesant was disciplined by the Dutch West India Company.  "From then on, Jews in the colony were allowed to trade and own real estate, but not hold public office, open a retail shop, or establish a synagogue."[5]

In Jonathan Sarna's *Commentary on Anti-Semitism and American History,* he offers a thorough analysis of the history of anti-Semitism in North America, including

---

[3] https://www.jewishvirtuallibrary.org/new-amsterdam-s-jewish-crusader
[4] https://www.jewishvirtuallibrary.org/new-amsterdam-s-jewish-crusader
[5] https://www.jewishvirtuallibrary.org/new-amsterdam-s-jewish-crusader

examples from colonial times through the early days of the young republic[6] and beyond, cresting in the half century preceding World War II.[7]

In 1956 Lois Waldman published an exposé outlining the history of anti-Semitism in the American workplace. He began with the troubling assertion that, "existing evidence concerning the employment of Jews in the United States indicates that American Jews still face handicaps in obtaining employment, handicaps that are not faced by non-Jews…[Jews] are largely excluded from many of the basic industries, such as commercial banking, automobile manufacturing, shipping and transportation, agriculture and mining."[8]

A report from September 1955 by the Chicago Bureau on Jewish Employment Problems "found that Jewish job-seekers have less than half as much opportunity to be placed by employment agencies as non-Jewish applicants."[9]

In May 1954 the Jewish Congress' Commission on Law and Social Action conducted a survey of the employment experiences of the law school graduates of Chicago, Columbia, Harvard and Yale Universities, which demonstrated, "Jewish law school students in the period 1951-1952 encountered markedly different treatment in

---

[6] Sarna referenced Jacob R. Marcus' *The Colonial American Jew,* "a definitive three-volume study published in 1970, [devoting] a full chapter to 'rejection' of Jews in pre-revolutionary times, discussing literary images, social prejudice, and full-scale incidents of anti-Jewish violence.  *See* https://www.brandeis.edu/hornstein/sarna/popularandencyclopedia/Archive/Anti-SemitismandAmericanHistory.pdf.

[7] "During this era of nativism and then isolationism, Jews faced physical attacks, many forms of discrimination, and intense vilification in print, on the airwaves, in movies, and on stage." https://www.brandeis.edu/hornstein/sarna/popularandencyclopedia/Archive/Anti-SemitismandAmericanHistory.pdf

[8] https://www-jstor-org.proxy.binghamton.edu/stable/pdf/4465458.pdf?refreqid=excelsior%3A0e06d7ce83e030d0d3393aa84404e928&ab_segments=&origin=&acceptTC=1

[9] https://www-jstor-org.proxy.binghamton.edu/stable/pdf/4465458.pdf?refreqid=excelsior%3A0e06d7ce83e030d0d3393aa84404e928&ab_segments=&origin=&acceptTC=1

applying for employment in the legal profession.  The survey revealed that the rate of job acceptance is substantially lower for Jewish than for non-Jewish graduates."[10] As a result, 35 percent of Jewish graduates seeking employment in the legal field admitted to refraining from applying to certain businesses out of the fear of discrimination.

In February 2022, Matt Gonzales with the Society for Human Resource Management (SHRM) authored an article titled, "Combating Anti-Semitism in the Workplace." Gonzalez's research demonstrated that "one in 4 Jewish Americans say they have been a target of anti-Semitic behavior, such as a physical attack or a racial slur, according to a 2021 report by the American Jewish Committee. These incidents happen in public, at schools and in the workplace."[11]  Andrea Lucas, a commissioner on the Equal Employment Opportunity Commission added, "too often, instances of anti-Semitism in the workplace go ignored, unreported or unaddressed."[12] Gonzalez clarified that examples of anti-Semitism in the workplace "include firing, not hiring or paying someone less because the person is Jewish; assigning Jewish individuals to less-desirable work conditions; refusing to grand religious accommodations; and making anti-Jewish remarks."[13]

As recently as 2023, Resume Builder found that 1 in 4 hiring managers say they are less likely to move forward with Jewish applicants.  Key findings include:

- 26% of hiring managers say they are less likely to move forward with Jewish applicants; top reason for negative bias is belief Jews have too much power and control.

---

[10] https://www-jstor-org.proxy.binghamton.edu/stable/pdf/4465458.pdf?refreqid=excelsior%3A0e06d7ce83e030d0d3393aa84404e928&ab_segments=&origin=&acceptTC=1
[11] https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-effectiveness/pages/combatting-antisemitism-in-the-workplace.aspx
[12] https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-effectiveness/pages/combatting-antisemitism-in-the-workplace.aspx
[13] https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-effectiveness/pages/combatting-antisemitism-in-the-workplace.aspx

- 26% make assumptions about whether a candidate is Jewish based on their appearance.

- 23% say they want fewer Jews in their industry.

- 17% say leadership has told them to not hire Jews.  This is true of more hiring managers in education, entertainment and business.

- 33% say antisemitism is common in their workplace; 29% say antisemitism is acceptable in their company.

https://www.resumebuilder.com/1-in-4-hiring-managers-say-they-are-less-likely-to-move-forward-with-jewish-applicants/

Plaintiff does not want to burden the Court, at the pleading stage, with an overabundance of history and rationale underlying the importance of protecting the rights of Jewish-American citizens.  However, we would feel remiss if we did not include a short essay authored by the leading professor of American Jewish history in the country, just for purposes of this brief, Jonathan D. Sarna.  Professor Sarna is the Joseph H. and Belle R. Braun Professor of American Jewish History at Brandeis University.  He is widely regarded as the most knowledgeable academic in the United States on issues pertaining to American Jewish History.[14]  See Exhibit A to this Brief.

## 2.    FACTUAL BACKGROUND

In a comprehensive complaint, Plaintiff has been careful to spell out the responsibilities of Defendants in order to understandably, fairly and comprehensively set forth the facts underlying his claim of religious discrimination. Although the Defendants

---

[14] Jonathan Sarna – Wikipedia https://en.wikipedia.org/wiki/jonathan_sarna; https://www.brandeis.edu/near-eastern-judaic/people/faculty/sarna.html.

would relegate the Second Amended Complaint to irrelevancy, the Court in its analysis will begin with an examination of the factual allegations of the Plaintiff's pleading.

On January 15, 2021, the U.S. Equal Employment Opportunity Commission issued guidance regarding the issue of religious discrimination.  Plaintiff's Second Amended Complaint, ¶30.  Defendants knew of that guidance, and further were advised by Executive Order 13985, 86 Fed. Reg. 7009 (January 20, 2021) concerning the policies of advancing racial equity and support for underserved communities through the Federal Government.  *See id.*, ¶32.  A lengthy declaration was issued by the President of the United States, set forth in ¶33 of the Second Amended Complaint, specifically noting: "Entrenched disparities in our laws and public policies…."  *Id.,* ¶33. The Presidential Proclamation related to the "human cost of systematic racism", and stated the importance of the Federal Government pursuing a "comprehensive approach to advancing equity for all…."  -that would include those "historically underserved, marginalized…."  The observant Jew in America falls within this category, and, as noted earlier, has traditionally faced, and still faces, not only discrimination, but also potential violence.  Religious communities, in particular, may face discrimination based upon their level of observance. The observant Jew in America is often demonized not only because of appearance and style of dress, but, even more importantly, as result of their observance of religious precepts relating to dietary habits and the inability to work on the Sabbath and other Holy Days.

It is, and was at the time Mr. Podell applied for the jobs in question, the official policy of the Administration that "all" Executive Branch Agencies were to "affirmatively advance civil rights and equal opportunity for members of religious minorities by analyzing

their programs and policies and working to redress the inequities that are barriers to equal opportunity." *See id.* ¶34.  Instead of doing this, Defendants in this case did precisely the opposite.  *See* ¶¶35 through 38.

Jeffrey Podell is an observant Jew who resides in the Eastern District of Pennsylvania. Second Amended Complaint, ¶1.  Plaintiff carefully complied with every requirement in connection with his job applications for police officer positions with the National Geospatial Intelligence Agency ("NGA").  As set forth in the Second Amended Complaint Plaintiff was specifically told by Defendant Jordan, hiring manager for the NGA Police, that there were no alternatives to the testing dates scheduled on Saturdays, the Jewish Sabbath, for the particular phase of the hiring process at issue and invited Plaintiff to reapply in a number of months on the website.  *See* ¶43.  It should be noted that at no time did those corresponding with Mr. Podell indicate that there was some exclusivity to Virginia or Missouri with respect to the application process or the website.

Shortly thereafter, Plaintiff was invited via email to come to Springfield, Virginia, for pre-employment processing, which was also to be held on a Saturday. *Id.,* ¶44. Plaintiff informed Defendant that he was unable to attend the first phase of the pre-employment testing because it was held on the Sabbath and that he holds religious beliefs "as a Sabbath observant Jew".  *See* ¶45.  The response, also via email, was that Defendant only had available testing dates on Saturdays, but they would speak with ~~its~~ their Human Resources "apparatus" about "alternative testing dates".  *Id.,* ¶46.  In spite of the promises made to Plaintiff, he never heard back from the agency or the individual in question.  *Id.*  Plaintiff, however, did not give up, and attempted to stay in contact with the individuals who nevertheless only proposed dates falling on a Saturday, and despite

Mr. Podell reiterating that he could not attend because of his Sabbath obligations, would make no reasonable accommodation. *Id.,* ¶¶47-49. Plaintiff then received notification that he had not been selected for the officer positions. *Id.,* ¶50.

Plaintiff brought these matters to the attention of the NGA's Office of Diversity, Inclusion and Equal Employment Opportunity.  Plaintiff never received a call back from his request. *Id.,* ¶51.  Calls were made by Plaintiff to the appropriate office as set forth in ¶51, *et seq.*  The course of events demonstrates a sad but blatant failure to comply with federal law, policy or proclamation.

Plaintiff Podell then initiated a complaint process in which he and others were interviewed.  Defendants, in the course of that process, demonstrated no interest and/or familiarity with affording Podell a reasonable accommodation.  *See* Second Amended Complaint, ¶59, *et seq.*  Plaintiff Podell went on to file a formal Complaint with the appropriate agency, *see id.,* ¶65, in which he set forth all of the appropriate events. Plaintiff Podell submitted Answers to Interrogatories that were put to him by the investigator, and at all times was cooperative, offering any and all information at his disposal.

Plaintiff Podell even tried to educate Defendants as to what other organizations and agencies do to reasonably accommodate religious needs.  *See* ¶72.  Defendants ultimately admitted being aware of Plaintiff's request for a reasonable accommodation, and Defendants further acknowledged that they failed to respond or take any action to address Podell's needs and concerns.   Incredibly, Defendants, as set forth in the Complaint, denied that they were familiar with policies concerning reasonable

accommodation, which statements are either false or are a total abrogation of comprehensive federal policy, training and proclamation. *See* Complaint, ¶100, *et seq.*

Defendant Jackson, a management official with the NGA Police, in particular indicated that Plaintiff Podell's religious inability to attend Saturday screening would "remove Plaintiff from further consideration", again, totally in contradiction with stated federal policy and statutory mandates. *See id.,* ¶81, *et seq.* There is no doubt that a reasonable accommodation was not made to Mr. Podell, and further, none was attempted, in spite of legal and policy obligations which were blatantly ignored. Defendant Jordan stated, for example, that there were no planned alternative screening dates and no attempt was made to offer any reasonable accommodation. *See id.,* ¶¶89 through 157. The course of events suggests not only that there was a failure to afford a reasonable accommodation, but also that such failure was both knowing and intentional. Virtually every Government policy, statute and regulation with respect to discrimination against minorities, based upon religious reasons, were swept away by the officials involved. Defendants and their agents and representatives acknowledge being aware of Plaintiff's religious beliefs and restrictions, *see* ¶164, but nevertheless made no attempt to accommodate him. It is not even clear whether HR was contacted, as Defendants said they would do, but the weight of the evidence appears to be to the contrary. *See id.,* ¶¶168, *et seq.* Defendants, in order to evade "intent", allege that they were simply ignorant of the laws, regulations, statutes and proclamations. However, Defendants could not reasonably sustain the claim that they were not aware of the policies concerning religious discrimination, when such policies are posted in the workplace and otherwise disseminated and personnel receive training regarding the same. *See,* ¶¶102-104 of the

Complaint.  The reason why Plaintiff Podell's pleading is so clear and specific, is to impart an understanding that demonstrates that what occurred in this matter was not a "one off" slip or minor indiscretion, but rather represents a policy, procedure and practice to ignore the rights of religious minorities, especially those of the Jewish faith.

On September 1, 2022, with more than 180 days having elapsed since the filing of his formal complaint with the EEOC without final action, Plaintiff commenced the instant action.  The suit has been brought against appropriate individuals who are in a position to oversee the agencies to which Podell was applying for jobs.

Defendant Lloyd J. Austin, Secretary of the United States Department of Defense, was sued in his individual capacity since he is responsible for the administration and implementation of policy within the Department of Defense.  He is ultimately responsible for the issuance of directives and memoranda to subordinate personnel in connection with diversity and equity.

Defendant Frank D. Whitworth, III is Director of the National Geospatial Intelligence Agency.  This is the Agency which would have provided the job for which Mr. Podell was qualified and applied to.  He is also responsible in connection with diversity, equity and inclusion.  Also named are Frank Kenney, Agency Head of the National Geospatial Intelligence Agency Police; the United States Department of Justice; the National Geospatial Intelligence Agency; and the National Geospatial Intelligence Agency Police. Other Defendants are Richard Weiss, management official of Defendant NGA Police; Jason Tinnin, management official of Defendant NGA Police, First Line Supervisor to Defendant Jordan; Wesley Lee Jordan, management official at NGA Police; Jesse McNeil, management official at Defendant NGA Police, specifically involved as a hiring

official; Marcus Dwayne Jackson, management official of NGA Police, and hiring manager for the vacancies in Springfield, Virginia; and Defendant Marcel Young, management official of Defendant NGA Police, also specifically involved in the hiring process.  Finally, Larence Dublin has been sued in connection with his overseeing the selection process for Defendant NGA Police.

The individuals named were not casually or recklessly chosen but represent those who are in a position to know what the property, equity and inclusion requirements are.

**3.    ARGUMENT**

    **3.1.   <u>Motion to Transfer Venue</u>**

        3.1.1 <u>Legal Standard</u>**.**

Under Federal Rule of Civil Procedure 12(b)(3), "Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great W. Mining & Mineral Co. v. ADR Options, Inc.,* 434 F. App'x 83, 86 (3d Cir. 2011) (citing *Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724-25, 19 V.I. 642 (3d Cir. 1982)). To support their positions, "[t]he parties may submit affidavits ... and may stipulate as to certain facts." *Lannett Co. v. Asherman,* Civ. A. No. 13-2006, 2014 U.S. Dist. LEXIS 23501, 2014 WL 716699, at *3 (E.D. Pa. Feb. 24, 2014) (citing *Manning v. Flannery,* Civ. A. No. 09-03190, 2010 U.S. Dist. LEXIS 1091, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010)).

> When deciding a motion to dismiss for improper venue,
> the court "accept[s] as true all of the allegations in the complaint,
> unless those allegations are contradicted by the defendants' affidavits."

*Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citing *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)). ***But "even when the court considers affidavits and other evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor.'"*** *Lannett*, 2014 U.S. Dist. LEXIS 23501, 2014 WL 716699, at *3 (quoting *Manning*, 2010 U.S. Dist. LEXIS 1091, 2010 WL 55295, at *4).

*Healthcare Servs. Grp v. Skyline Servs. Grp.,* 2018 WL 637773, U.S. Dist. LEXIS at *14-*15  (E.D. Pa. Jan. 30, 2018)(emphasis added).

### 3.1.2   Venue Is Proper in the Eastern District of Pennsylvania Under Applicable Statutes

This is not a case where Jeffrey Podell was simply denied the opportunity of performing testing and other requirements on a Saturday, the Jewish Sabbath, based upon a casual employment application process.  Rather, it is alleged, Mr. Podell was a qualified candidate who made every reasonable effort to cooperate with the government agencies to which he had applied and was bluntly rejected in connection with any reasonable accommodation, based upon his religious practice.

Plaintiff brought this case not only under Title VII of the Civil Rights Act of 1964, but also as a claim under the Religious Freedom Restoration Act, as well as direct constitutional claims.

Plaintiff asserts that venue is proper in the Eastern District of Pennsylvania. Specifically, ¶19 states that an action may be brought, *inter alia,* in any judicial district in the state in which the unlawful employment practice was alleged to have been committed. *See* Second Amended Complaint, ¶19.   *See also* 42 U.S.C. § 2000e-5(f)(3) ("Such an action may be brought in any judicial district in the State in which the unlawful employment

practice is alleged to have been committed…").  The general venue statute, 28 U.S.C.

Section 1391 provides:

> **(e) Actions where defendant is officer or employee of the United States.**
>
> **(1)** In general. A civil action in which a defendant is an officer or employee
> of the United States or any agency thereof acting in his official capacity or
> under color of legal authority, or an agency of the United States, or the United
> States, may, except as otherwise provided by law, be brought in any judicial
> district in which (A) a defendant in the action resides, (B) a substantial part
> of the events or omissions giving rise to the claim occurred, or a substantial
> part of property that is the subject of the action is situated, or (C) the plaintiff
> resides if no real property is involved in the action….

28 U.S.C. § 1391(e)(1).

In cases involving claims under Title VII and another claim governed by the

general venue statute of § 1391, courts have consistently transferred the entire action to

the district where venue is proper for both claims, rather than splitting the claims. *Vinson*

*v. Seven Seventeen HB Phila. Corp. No. 2,* 2001 U.S. Dist. LEXIS 25295, *101-102  (E.

D. Pa. Oct. 31, 2001) (citing examples).  Therefore, in the case at bar, venue would be

proper in the Eastern District under the Title VII venue statute as the location where the

alleged discriminatory employment practice was committed, 42 U.S.C. § 2000e-5(f)(3),

and under Section 1391(e)(1)(B) "where a substantial part of the events or omissions

giving rise to the claim occurred."[15]

This case is unique in that all of the events in question occurred during the COVID

crisis.[16]   As a result of the COVID crisis, the interviews concerning Jeffrey Podell and

---

[15] Defendant is critical of the fact that Plaintiff has cited the general venue statute. There is nothing erroneous in this regard.  Although Title VII has its own specific venue provision found at 42 U.S.C. §2000e-5(f)(3), as noted by Defendant venue generally must be established for each separate claim in a complaint. *Kravitz v. Institute for Int'l Research,* 1993 U.S. Dist. LEXIS 15669, at *6-*7 (E.D. Pa. Nov. 3, 1993).

[16] As a result of confirmed cases of 2019 Novel Coronavirus January 31, 2020, Alex M. Azar, II, Secretary of Health and Human Services, determined that a public health emergency exists and had existed since

communications to and from NGA were conducted within the Eastern District of Pennsylvania as he was working out of his residence within the Eastern District of Pennsylvania.

Plaintiff, in ¶¶21 through 27, has set forth specific allegations concerning venue which would fit within the statutory venue criteria.   There is no issue concerning exhaustion of administrative remedies as a result of action taken by Defendants.   *See* Complaint, ¶28.

Defendant has attached an Affidavit to its Brief, but it is not separately filed or affixed to the Motion.   The Declaration of Jack Rickert indicates that he is an Assistant General Counsel, an attorney employed by the National Geospatial-Intelligence Agency. Attorney Rickert, however, does not state whether the facts asserted within the affidavit are within his personal knowledge or otherwise set forth the basis for his knowledge. Plaintiff has not been given the opportunity of deposing this individual, who claims, in conclusory fashion, that the NGA is located in Virginia and Missouri.   The affidavit denies the NGA has any "branches, offices or facilities" in Pennsylvania.   It asserts that Springfield, Virginia is 166 miles away from Philadelphia, not a great distance in the modern world, especially given the resources of the United States of America in comparison to those of Jeffrey Podell.

According to the Jack Rickert Affidavit, the NGA maintains employment records in both Virginia and Missouri, but does not "store" records in Pennsylvania.   While "storage" is a relative term in the current era of electronic storage facilities, there is no question that from the point of view of the applicant, the data is collected or "stored" on websites, the

---

January 27, 2020, nationwide.  That declaration was renewed as recently as October 13, 2022. https://aspr.hhs.gov/legal/phe/Pages/default.aspx.

secured internet and other electronic media, rendering irrelevant if there is any particular hard copy in Virginia or Missouri.  In fact, the information is "stored" wherever it is utilized or accessed, in this case the Eastern District of Pennsylvania.

More to the point, the NGA communications were directed to Mr. Podell in the Eastern District of Pennsylvania, and the information he provided with respect to those communications, as well as his application generally, were supplied by him in the Eastern District, as was the rejection of his requests for alternative testing dates. The failure to accommodate his religious requirements, therefore, occurred there, and certainly, "a substantial part of the events or omissions giving rise to the claim," thus satisfying both venue statutes.

Jack Rickert attaches vacancy announcements of jobs available in Virginia and Missouri.  It is claimed, without any factual supporting detail whatsoever, that had Plaintiff obtained the position of NGA Police Officer, he would have been employed and physically located in Virginia as opposed to St. Louis, Missouri.

The Rickert affidavit claims that no decisions related to the hiring of Plaintiff were made in Pennsylvania.  It is unknown where those decisions were made, by whom, and under what circumstances since there has been no discovery.  The NGA officials involved in the hiring decision and whether to offer an alternative testing date were said to have been located in Virginia or Missouri, but more specifics are not offered and it is not known who specifically was located in one state versus the other.

In essence, the Affidavit is a generalized, insufficiently specific extrajudicial document on a preliminary motion pursuant to Federal Rule of Civil Procedure 12.  It should be disregarded by the Court.

Furthermore, it is noteworthy that the test under Section 2000e-5(f)(3) is disjunctive (the statute uses the term "or"), such that the Plaintiff's chosen venue need only satisfy one of the "prongs". *Berg v. Aetna Freight Lines*, 2008 U.S. Dist. LEXIS 54905, at * 6 (E. D. Pa. July 14, 2008) (statute provides "disjunctive options").

 It would also appear that the fourth prong of the Title VII venue statute would not apply, in terms of the "principal office", because the ability to bring and maintain this action in the Eastern District of Pennsylvania had previously been established and set forth. The language of the statue makes clear the location of the principal office is proper for venue only if no other district suffices to meet the requirements under Section 2000e-5(f)(3). *Berg, supra,* at *6.

Plaintiff has also submitted as a separate document Affidavit from Jeffrey Podell, filed contemporaneously herewith.

Defendants seek to have this case transferred to a venue which it obviously considers more likely to be supportive of its views.  The Complaint, being quite explicit with respect to the facts, including venue, would clearly be sufficient to dictate that this case should remain in the Eastern District of Pennsylvania, at least until appropriate discovery is complete. As we have noted, Mr. Podell has submitted his own comprehensive Affidavit, which contests many of the facts asserted by the Government and which therefore remain contested at the current time.

### 3.1.3  Case Law Regarding Venue in Employment Cases.

 The Government attempts to overcome the presumption in favor of Plaintiff by the Affidavit discussed previously and by citing cases that are either irrelevant or are unsupportive of its ultimate position.

Defendants rely upon *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012), a nonprecedential opinion, which in turn relies upon the 10th Circuit case of *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998).

*Pierce* was a Title VII sexual harassment case.  In *Pierce*, defendant filed an affidavit containing facts with respect to the location of the employment practices. "Plaintiff failed to present any evidence in response to defendant's affidavit."  At 1192. That is not the case here, as Plaintiff has submitted a counter-affidavit.  In addition, the Complaint in the case at bar is much more explicit with respect to venue.  While *Pierce* may have been appropriate to the specific facts in that case, it is clearly distinguishable. Similarly, in *Weaver v. Walgreens, Inc.,* 2021 U.S. Dist. LEXIS 33144 *,  2021 WL 698206 (E.D. Pa. Feb. 23, 2021), the complaint was devoid of reference to the location of the relevant events for purposes of venue,  *Id.* 2021 U.S. LEXIS 33144, at *5 n. 5, and the plaintiff did not dispute the affidavits submitted by defendant. *Id.  Weaver* is therefore inapposite.

Also cited, with an "*E.g.*" signal, is *Holiday v. Bally's Park Place, Inc.*, 2007 WL2600877, 2007 U.S. Dist. LEXIS 66554 (E.D. Pa. Sept. 7, 2007) (Kauffman, J.). Defendants cite the case merely for the proposition that the court can consider facts outside the complaint for purposes of determining venue.  The case was a diversity action involving convenience of the parties, which is not the question at issue in the case at bar. In that context, Judge Kauffman considered the weight of various factors.  There is no suggestion that affidavits were even considered, except ~~to~~ the Court's reference to the fact that it may consider facts outside the complaint to determine proper venue.

17

*Holiday also cited to Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 U.S. Dist. LEXIS 23839, 2005 WL 2660351 (E.D. Pa. Oct. 18, 2005).  Judge Schiller in *Fellner* noted that although the parties may submit affidavits in support of their positions and the court may examine facts outside the complaint to determine proper venue, it must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor. *Id.,* 2005 U.S. Dist. LEXIS 23839, at *4.  The Third Circuit has determined that, "the movant (the defendant) bears the burden of demonstrating that venue is improper… [and] The defendant also bears the burden of establishing that a venue transfer is warranted." *Id.*

Defendants direct the Court to a number of decisions interpreting the "district … in which the unlawful employment practice is alleged to have been committed" prong of the Title VII venue statute. 42 U.S.C. § 2000e-5(f)(3). Defendants' brief has "cherrypicked" cases which emphasize the location of the employer.  However, in *Berg v. Aetna Freight Lines*, 2008 U.S. Dist. LEXIS 54905, at * 6 (W. D. Pa. July 14, 2008), a sexual harassment case, the court stated: "In determining where an alleged discriminatory practice occurred, courts look ***not only to where the decisions were made, but also to where the discriminatory acts took place***." *Id.* (relying upon *Cox v. Nat'l Football League,* 1997 U.S. Dist. LEXIS 15307, *7, 1997 WL 619839, at *3 (N.D. Ill. 1997)) (emphasis added)..  To hold otherwise allows employers everywhere, "to make their decisions to terminate and discipline in far-away offices in order to protect themselves from litigation." *Id.*  Accordingly, in *Berg,* although sexually suggestive emails were generated in and sent from the Eastern District of Ohio, and events relating to Berg's termination took place there, venue was proper in the Western District of Pennsylvania because elements of the conduct comprising her claims, specifically sexually inappropriate

conduct and physical harassment occurred in Pittsburgh.  In *Cox*, although the decision to impose a fine on Cox was made by Tagliabue in New York, the acts of imposing the fine and paying the fine by mailing Cox's game check to the NFL was performed by the management of the Chicago Bears in Illinois.  Cox lived and worked in this Illinois and, thus, was required to pay the fine there. *Cox, supra,* 1997 U.S. Dist. LEXIS 15307, at *6 & *7.

As in *Cox*, the Defendants here urge this court to ignore what took place in the Eastern District of Pennsylvania, the emails and communications by Defendants and their representatives which flouted prevailing law on religious discrimination and unlawfully failed to provide accommodation for Mr. Podell's religious belief, as merely ***the effect*** of decisions and actions made or initiated elsewhere. *Cox* found this, "formalistic decision-versus-effect dichotomy unpersuasive" and without merit because, "the fact that the decision that required them to do so [pay the fine] was made elsewhere does not necessitate the conclusion that no alleged act of discrimination occurred in this district. It taxes common sense to suggest otherwise.*"  Id.* at *6-*7.   Clearly, what occurred here in the Eastern District of Pennsylvania, was not an "effect" but rather the ***act of discrimination*** itself. *Compare N. American Communs. Inc. v. Herman*, 2018 U.S. Dist. LEXIS 11815 (W. D. Pa. Jan. 25, 2018) ( where emails and telephone calls soliciting NAC employee to leave received in Western District were acts breaching the contract's non-solicitation clause) (decided under  § 1391(b)(2), where test is location of those events or omissions giving rise to the claim.)

It is also noteworthy that there are counts in this case that are not simply Title VII counts.  It is clearly for that reason that the Government argues assiduously that all of

those other counts must be dismissed.  The Government argues that venue must "generally" be established for each claim contained in the Complaint, citing *Weaver v. Walgreen Company*, *supra.* That does not mean that if there is a count in the Complaint which might dictate venue, which would be a different venue than another count would require, then the most restrictive venue provision applies (which happens to be most beneficial to Defendant). Given the broad nature and scope of the claim here, and the relief requested, it can hardly be said that Title VII is the principal cause of action.

The Government's approach to the so-called "special" Title VII venue statute, is to rely upon the vague and summary Affidavit of Attorney Rickert.  Absent that, relying upon the facts in the Complaint, and the Podell Affidavit, there is simply no basis to transfer the case at this time.  This is especially true given the Court's obligation to take the allegations and Affidavit of Plaintiff as true under the current status of this case.

The United States attempts to "try" this issue through the aforementioned Rickert Affidavit.  Furthermore, relying upon the possible location of Mr. Podell in Missouri, benefits the Government not at all.  In fact, quite to the contrary.  The fact that even the Government cannot argue that Virginia would necessarily have been the locale of Mr. Podell's employment, militates in favor of the position espoused by Plaintiff that the appropriate venue is where the discrimination, occurred in the Eastern District of Pennsylvania. The Rickert declaration, cannot eviscerate specific counts of the Complaint referenced earlier that, due to the COVID emergency, all of the material components of the discrimination which occurred were located at Mr. Podell's Ardmore residence.

### 3.2.   Government's Motion to Dismiss

#### 3.2.1   Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not deciding whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must, "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted); *Markowitz v. Northwest Land Co.*, 906 F. 2d 100, 103 (3d Cir.  1990). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon these documents. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Complaints alleging civil rights claims are not subject to heightened pleading standards. *Mathias v. York Cnty.*, 2017 U.S. Dist. LEXIS 27409, *27 (M. D. Pa. Feb. 28, 2017).  The Federal Rules of Civil Procedure require only that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must do more than

simply allege a plaintiff's entitlement to relief, however. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A complaint must show entitlement to relief by alleging specific facts. *Id.* The plaintiff, "must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555(2007)).

To survive a motion to dismiss, a complaint must plead, "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements. *Twombly*, 550 U.S. at 556. The plausibility standard under *Twombly* "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Id.; Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), even if it may appear that "actual proof of those facts is improbable…" *Twombley,* 550 U.S. at 556.

Before dismissing a complaint as deficient, the Court should grant leave to amend. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). The Third Circuit has previously held that "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

The Government, in its Motion to Dismiss, once again attempts to analogize its position to a request for summary judgment.  There is absolutely no document or other extraneous factor, that the Government has a right to rely upon, that would support summary judgment at this juncture, something which our legal ancestors would hardly be able to comprehend.  It would be an understatement to say that such an argument is troublesome.

### 3.2.2   Due Process, Equal Protection and First Amendment Free Exercise Claims Are Not Preempted.

Count IV contains claims of a violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution.  Count V is an equal protection violation claim under the Fifth Amendment to the United States Constitution, while Count VI is a claim of violation of the free exercise clause pursuant to the First Amendment to the United States Constitution.  Those counts each set forth their basis.  It is alleged that Plaintiff did not have a viable opportunity to work through the internal civil rights complaint system of the federal departments which have been sued.  Plaintiff was not given the same opportunity as Defendants, it is alleged, to set forth his position.  *See, i.e.*, 248 through 251, Second Amended Complaint.

Plaintiff has also requested damages for the constitutional violation, that may not be available under Title VII. *See* 253, Second Amended Complaint. The wherefore clause, and similarly, requests relief that Defendants will argue are not applicable in Title VII.

Count V, the Equal Protection claim, noted the opportunities given to Defendants, in the administrative process, to state and provide their position, but not to Plaintiff.  *See, i.e.,* 257, Second Amended Complaint.

23

Plaintiff takes the position in Count V that he was denied equal protection, and further alleges specific damages thereto.

Count VI contains an explicit pleading that Defendants have impaired Plaintiff's right to practice his religion, and his free exercise thereof.  That surely is a component of this case, since Defendants refuse to provide, consider or respond to request for a reasonable accommodation based upon religious practice, even though same is explicitly required by Presidential Proclamation, the regulatory structure, and other binding components upon the conduct of Defendants.  Again, explicit damages related to the violation are set forth.

The Government, understandably, would like to conflate the constitutional claims with Title VII so that it can argue preemption.

In *Henley v. Brown*, 686 F.3d 634, 638 (8th Cir. 2012), the female plaintiff alleged sex discrimination while attending the police academy.  The plaintiff brought claims under the Fourth and Fourteenth Amendments.  *Id.*  Defendants filed a motion to dismiss for failure to exhaust administrative remedies on the basis that Title VII provided the exclusive remedy for her claims.  *Id.*  The district court granted defendants' motion and the Eighth Circuit reversed.  *Id.* at 644.

The Circuit Court noted that the Supreme Court has yet to decide whether Title VII provides the exclusive remedy for discriminatory practices, but has provided instruction through its jurisprudence.  *Id.* at 640.  The Supreme Court, "recognized generally that Title VII does not preclude a public employee from seeking other remedies."  *Id.* at 640 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)).  "Title VII was designed to supplement rather than supplant existing laws and institutions relating to employment

discrimination."  *Id.* (quoting *Alexander*, 415 U.S. at 47-49).  "The Court observed that '[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief.'"  *Id.* (quoting *Johnson v. Railway Express Agency*, 421 U.S. 454, 459 (1975)).

The Circuit Court in *Henley* next looked to the Supreme Court's opinion in *Brown v. General Services Administration*, 425 U.S. 820, 96 S. Ct. 1961 (1976).  *Brown* was an opinion authored by Justice Stewart.  It specifically concerns § 717 of the Civil Rights Act of 1964.  Demonstrative of the era in which *Brown* was decided, Clarence Brown is addressed as a "Negro".  He was employed by the General Services Administration and had been since 1967.  The specific issue in *Brown* is not the same as in this case.  The issue as stated by Justice Stewart was whether § 717 of the Civil Rights Act of 1964 is, "the exclusive individual remedy available to a **federal employee** complaining of **job-related racial discrimination?"**  *Brown, supra,* at 825 (emphasis added).  *Brown* was decided prior to modern legal principles concerning direct civil rights actions and was premised on the assertion that there was no constitutional basis for a claim of discrimination on the part of a federal employee against the federal government.  *Brown* also raised the specter of sovereign immunity, in order to justify its preemption decision in the context of an already-employed individual.

It is also not noted by the Government that *Brown* had nothing to do whatsoever with indicating that there would not be a separate constitutional claim.  In *Brown*, the issue only reached the court because the jobholder failed to file a timely complaint under § 717(c) and the employee therefore attempted to rely upon a preexisting Civil Service

remedy.  The *Brown* decision hardly contains *dicta* that would support the position of the Government.

> Although federal employment discrimination clearly violated both the Constitution, *Bolling v. Sharpe*, 347 U.S. 497 (1954), and statutory law, 5 U.S.C. § 7151 before the passage of the 1972 Act, the effective availability of either administrative or judicial relief was far from sure.

*Id.*

Therefore, for the Government to claim the broad preemption which they do in their Brief, is not supported by the United States Supreme Court decision which they rely upon as dispositive.

After analyzing guidance provided by the Supreme Court's jurisprudence, the Circuit Court in *Henley* stated as follows:

> First, Title VII provides the exclusive remedy for violations **of its own terms** and an employment discrimination plaintiff asserting the deprivation of rights created by Title VII must comply with the Act's procedural requirements before seeking judicial review.  Second, a plaintiff may not invoke a purely remedial statute, such as section 1985(3), to redress a violation of a right conferred **only** by Title VII.  However, **when the employer's conduct violates not only rights created by Title VII, but also rights conferred by an independent source, Title VII supplements, rather than supplants, existing remedies for employment discrimination**.

*Henley*, 686 F.3d at 641 (emphasis added).  The Court concluded, "while Title VII provides the exclusive remedy for employment discrimination claims created by its own terms, its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the constitution," and expressly referred to claims for discrimination and equal protection.  *Id.* at 642.

In *Williams v. Pa. Human Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017), the Third Circuit cited *Henley*'s conclusion that a right independently conferred by the

Constitution is not preempted by Title VII.  This demonstrates how our Circuit would be likely to decide the "presumption" issue raised by the Government in the case at bar.

However, more to the point for the instant action is *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693 (1954), decided before the advent of modern civil rights law, or even Title VII.  *Bolling* was a Chief Justice Warren opinion which held that the Equal Protection Clause of the Fourteenth Amendment prohibits states from maintaining racially segregated public schools.  The Fifth Amendment, noted the court, which is applicable to the District of Columbia, does not contain an Equal Protection Clause as does the Fourteenth Amendment which applies only to the states.

> But the concept of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive.  The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law", and therefore we do not imply that the two are always interchangeable phrases.   But as this court has recognized, discrimination may be so unjustifiable as to be violative of due process.

*Bolling* at 499.

The constitutional protections are not abandoned by the courts simply because Mr. Podell may have a Title VII remedy as well.

> In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government.  We hold that racial segregation in the public schools of the District of Columbia is a denial of the due process of law guaranteed by the Fifth Amendment to the Constitution.

*Bolling* at 500.

In stunning terms, the United States Supreme Court has clearly held that federal constitutional protections are not eviscerated just because the Federal Government or its agencies and employees are defendants who have committed the offense.

27

In a fallback position, the Government cites to a "*see*" citation, *Francis v. Mineta*, 505 F.3d 266 (3d Cir. 2007). Judge McKee, writing for the panel, addressed the situation of a former federal employee, who brought an employment discrimination claim. *Francis* was a case where there had been a failure to exhaust administrative remedies under Title VII, not at all applicable in the case before this Court.

Francis wore dreadlocks, claiming there were of religious significance. At issue was the RFRA, Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb-4. The court addressed the RFRA in the context of Title VII. Nothing in *Francis* would suggest that constitutional claims are non-existent because of the remedy provided by Title VII.

### 3.2.3  RFRA Claim

The United States, somewhat quirkishly, cites to prior authority, which it erroneously has relied upon, to argue that the RFRA is preempted by Title VII. What makes the argument of the Government oddly inappropriate is that it claims the court should rely upon the *Francis* decision, *supra*, and ignore the position of its "client", the Department of Justice. Here, Plaintiff is not asking the Court to overrule anything, but rather to rely upon the Government's position not to assert authority which arguably would be to its benefit and which clearly constitutes a waiver.

Fortunately, the Government, in this section, exercises, "its duty of candor", citing *Bostock v. Clayton County*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020), but even in its self-declared "candor" the Government does not fully and explicitly provide the Court with the details of the decision in *Bostock v. Clayton County*. *Bostock* answered the question as to whether an employer may fire an individual for being homosexual or transgender pursuant to Title VII. *Bostock* noted, as a key component of its holding, that Title VII may,

"intersect with religious liberties…." *Id.* at 1754.  Therefore, Congress recognized that the First Amendment may bar the application of employment discrimination laws.  In other words, Title VII does not exist independently of constitutional protections.  The Court discussed the Religious Freedom Restoration Act of 1993, codified at 42 U.S.C. § 2000bb, *et seq.*

> Because RFRA operates as a kind of super statute, displacing the normal operation of other federal laws, it might supersede Title VII's commands in appropriate cases.  *See*, § 2000bb-3.

*Id.*

Clearly, the Supreme Court of the United States understood the importance of the RFRA coexisting with, and in fact intersecting with, Title VII.

Although the Government concedes, "that federal employees may rely on RFRA for religious employment-discrimination claims", it attempts to walk back from its position by asking this court to dismiss the RFRA claim.  The position of the Government seems to be that while it will not rely upon Third Circuit precedent, this Court should nevertheless follow it to dismiss Podell's claim.  Clearly, such a determination by this Court would be accompanied by Plaintiff to file an interlocutory appeal.  It is believed, and therefore averred, that this Court is unlikely to ignore both the Justice Department and the United States Supreme Court, and to dismiss a viable claim under the RFRA which the Government acknowledges is inapplicable.  While a party cannot waive jurisdiction, this is not a jurisdictional dispute, but rather the applicability of a statute, predicated upon decisional developments.

Of note is a recent United States Court of Appeals decision in *Singh v. Berger*, 2022 U.S. App. LEXIS 35562, ___F.4th ___, 2022 WL 17878825 (D.C. Cir. Dec. 23, 2022). In that recent decision,  the Court of Appeals for the District of Columbia Circuit granted

an injunction to Jaskirat Singh and others who wished to serve the Nation by enlisting in the United States Marine Corps.  They were fit for the duty, but sought to maintain unshorn hair and beards and to wear certain articles of faith.  The District Court denied plaintiff's request for a preliminary injunction.  The Circuit Court reversed in part and remanded for prompt issuance of a preliminary injunction in favor of the plaintiff/petitioners.

Reiterating that the RFRA forbids the Federal Government from substantially burdening a person's exercise of religion, unless it shows that the burden is in furtherance of a compelling governmental interest and is a least restrictive means of so doing, the Court had no difficulty in reversing the trial court and ordering the issuance of the injunction.  As in the case at bar, the Marine Corps did not dispute the plaintiff/petitioner's religious legitimacy.  It is understandable that the Government would desperately attempt to eliminate the RFRA claim here, given that it is a powerful statement of the legislature's desire with respect to religious civil rights.

The Court noted the consistency between the RFRA and First Amendment analysis.  *See,* p. 37 of Slip Opinion.

### 3.2.4 Exhaustion/Hostile Work Environment

The first question is whether a hostile work environment is a basis of the claim in this case.  While, as ¶225 of the Amended Complaint sets forth, there have been egregious violations of EEOC guidance, at no point does Plaintiff allege a "hostile work environment" as an employee.  In Count VII, Plaintiff alleges as follows with respect to ¶268:

> The conduct of Defendants was severe and pervasive and created an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, and Plaintiff perceived the actions of

Defendant to be hostile on the basis of his sincerely held religious beliefs. ¶268.

This is contained within Count VII, "Hostile work environment religious discrimination in violation of Title VII of the Civil Rights Act of 1964."

It is Plaintiff's claim that the conduct of Defendants created a hostile or abusive environment, the word "work" perhaps being surplusage.

There is no question that Plaintiff is pleading that a reasonable person in his position would have found the process to which he was subjected, very explicitly set forth in the Complaint, to have been "severe" and "pervasive" and to have objectively created a hostile or abusive environment "that a reasonable person would find hostile or abusive" and that this was caused by Plaintiff Podell's sincerely held religious beliefs.

Defendant United States of America is shadowboxing, attempting to create a strawman that it could easily dispense with.

The Government refers to Exhibits B, C and D, but no such alphabetical designations can be found on the Brief provided to Plaintiff's counsel.  It is possible that the United States is referring to an October 12, 2021 letter by Jeffrey Podell to the EEO. There is nothing in that letter that would suggest a failure to exhaust administrative remedies.

Moreover, the Complaint amply sets forth that Plaintiff was careful in terms of presenting his claims and complaints, and that no time has any administrative agency suggested that there was a failure to exhaust remedies.  Quite to the contrary, as alleged in ¶192, Defendant NGA did not take any final action and therefore suit is permitted. There was no waiver of any "legal" remedy available, given the totality of the facts presented.

The Government not only argues failure to exhaust, without presenting any legitimate evidence to that effect in the documentation received by Plaintiff's counsel, but also claimed that Podell does not state a hostile work environment.  That has already been explained in connection with the Government's attempt to allege that Podell has pled a hostile work environment at a job that he did not yet have.  That is not the case.

### 3.2.5 Retaliation

The Government, again, in another boxing match with a shadow, refers to a retaliation claim in Count III.  Count III is specific in claiming that his assertion of his religious rights in and of itself was part-and-parcel of why he faced discrimination.

> 245.  The totality of the circumstances demonstrate that a causal link exists between Plaintiff's protected EEO activities and the adverse actions taken by Defendants.

Not only did the Defendants mistreat Plaintiff, fail to reasonably accommodate him and make it clear that observant Jews were not welcome in the job application process, but the agencies persisted in their denials and refusals even after they were duly apprised of their improper behavior.  It is certainly alleged by Plaintiff that his attempt to seek the rights to which he was entitled, as a religious accommodation, further hardened the hearts of Defendants so that the availability of a reasonable accommodation, or a job for that matter, became an impossible objective for Plaintiff.

The Government's response to this is that Podell did not give sufficient voice to his claim of retaliation, again citing exhibits not marked in the Brief provided to Plaintiff's counsel, but which apparently the Government believes justifies the equivalent of a Rule 12(b)(6) decision by this Court.  Podell, a layperson, clearly indicates that he believed his asking for an accommodation was an irritant to Defendants, leading to further improper

behavior on their part.  The Complaint filed by Podell alleged "discrimination" and was not required to use the magic language demanded by the Government.

The National Geospatial-Intelligence Agency, in its response, Bates Stamp 00052 to its Brief, noted that Mr. Podell's claim "1-5" were excepted.  That claim was based upon "religion" and provided the facts, without legal argument.  The totality of the Complaint filed in federal court would certainly lead a reasonable individual to believe that Podell claimed retaliation as a result of his repeated requests and attempts to comply with governmental protocol and policy.   There simply is nothing in the paperwork attached to the Government's brief, and upon which it is relying, that would suggest a failure to raise the issues contained within Plaintiff's Complaint.

Case law supported by the Government are factual situations and therefore "*see*" citations where EEOC complaints have been filed that did not barely give notice to the defendant of the nature of the charges.

3.2.6 <u>Dismissal of all Defendants other than Secretary Austin</u>

Defendants seek to dismiss everyone other than Secretary Austin, once again citing a decision inappropriately.

*Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 Fed. Appx. 209, 213 (3d Cir. 2012) was yet another decision specifically not precedential and not binding on the court.  In *Wadhwa*, the plaintiff was a *pro se* plaintiff who had been employed as a physician at the Philadelphia Veterans Affairs Medical Center.   He filed a claim of hostile work environment.  While counsel is reluctant to discuss a case, that is not precedent and not citable, the Government has asked this Court to rely upon it, by citing to it.  In that decision, it was held that the only proper defendant in the federal employee's Title VII action was

the head of the appropriate agency.  However, we do not know if there were specific allegations against other individuals, as in the case at bar.  What the Government does not note to this Court, is that there are in this Amended Complaint very specific behaviors said to be improper and illegal by Defendants.   *See* ¶¶3 through 14, where the responsibilities of the Defendants were listed.  The Amended Complaint is no shotgun approach to bringing in extraneous parties or defendants, and the Government does not so allege.

While Plaintiff was responsible in suing Defendants only in their representative capacities, the conduct of each is set forth in the very detailed Complaint filed.  In the factual portion of the Complaint, there are explicit statements concerning, for example, Defendant Jackson.  *See, i.e.,* 60-62, 69, 73-81, 83-87.  Defendant Jordan, 88-94; Defendant Tinnin, 94.  Again, there are explicit paragraphs addressing the conduct of Defendant Jordan, for example, 96-105, generally; Defendant Tinnin, 106-118.

The Government totally ignores that a plaintiff has a right to sue those who either create or enforce a policy, procedure and custom who were themselves directly involved in the discrimination, attempting to make an unsupported and unsupportable "preemption" type of argument.

## 4.    CONCLUSION

When the Government Brief is stripped down to its bare essence, it is nothing more than an attempt by the United States of America to escape the consequences of misconduct towards a religious minority, which conduct is explicitly prohibited by statute, regulation and Presidential Proclamation.   Based upon nonprecedential cases, and

relying upon marginalized authority, is an attempt by the United States to strip Mr. Podell

of legitimate claims that he has made under Title VII, the RFRA, and the American

Constitution.  Such attempts will not withstand scrutiny and should properly be rejected

by the Court as an effort on the part of the Government to sidestep its responsibilities to

the citizens of this Nation and to a historically, and presently, discriminated against

minority, the observant Jew.

Respectfully submitted,

RIEDERS, TRAVIS, DOHRMANN, MOWREY,
HUMPHREY & WATERS

By: /s/ Clifford A. Rieders, Esq.
PA Attorney ID #20962
161 West 3rd Street
Williamsport, PA 17701
Phone: 570-323-8711
Fax: 570-323-4192
Email: crieders@riederstravis.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY PODELL,
    Plaintiff

VS.

LLOYD J. AUSTIN III,
In his official capacity as Secretary of the
United States Department of Defense, UNITED
STATES DEPARTMENT OF DEFENSE;

FRANK D. WHITWORTH III,     **CASE NO: 22-cv-3505**
In his official capacity as Director of the
National Geospatial Intelligence Agency, NATIONAL **COMPLAINT FILED: 9/1/2022**
GEOSPATIAL INTELLIGENCE AGENCY;

                 **JUDGE: JOEL H. SLOMSKY**

FRANK KENNEY,
In his official capacity as Chief of Police,    **JURY TRIAL DEMANDED**
National Geospatial Intelligence Agency
Police, NATIONAL GEOSPATIAL INTELLIGENCE
AGENCY POLICE;

RICHARD WEISS,
In his official capacity as Assistant Chief
Of Police, National Geospatial Intelligence
Agency Police, NATIONAL GEOSPATIAL
INTELLIGENCE AGENCY POLICE;

JASON TINNIN,
In his official capacity as Major of Police,
National Geospatial Intelligence Agency
Police;

WESLEY LEE JORDAN,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

MARCUS DWAYNE JACKSON,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

JESSE MCNEIL,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

MARCEL YOUNG,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

LARENCE DUBLIN,
In his official capacity as Corporal of Police,
National Geospatial Intelligence Agency
Police;
                        Defendants

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the Public Access Policy of

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial

Courts that require filing confidential information and documents differently than non-

confidential information and documents.

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

By: /s/ Clifford A. Rieders, Esq.
PA Attorney ID #20962
161 West 3rd Street
Williamsport, PA 17701
Phone: 570-323-8711
Fax: 570-323-4192
Email: crieders@riederstravis.com

37

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JEFFREY PODELL,
        Plaintiff

VS.

LLOYD J. AUSTIN III,
In his official capacity as Secretary of the
United States Department of Defense, UNITED
STATES DEPARTMENT OF DEFENSE;

FRANK D. WHITWORTH III,              **CASE NO: 22-cv-3505**
In his official capacity as Director of the
National Geospatial Intelligence Agency, NATIONAL    **COMPLAINT FILED: 9/1/2022**
GEOSPATIAL INTELLIGENCE AGENCY;

                                      **JUDGE: JOEL H. SLOMSKY**
FRANK KENNEY,
In his official capacity as Chief of Police,         **JURY TRIAL DEMANDED**
National Geospatial Intelligence Agency
Police, NATIONAL GEOSPATIAL INTELLIGENCE
AGENCY POLICE;

RICHARD WEISS,
In his official capacity as Assistant Chief
Of Police, National Geospatial Intelligence
Agency Police, NATIONAL GEOSPATIAL
INTELLIGENCE AGENCY POLICE;

JASON TINNIN,
In his official capacity as Major of Police,
National Geospatial Intelligence Agency
Police;

WESLEY LEE JORDAN,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

38

MARCUS DWAYNE JACKSON,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

JESSE MCNEIL,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

MARCEL YOUNG,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

LARENCE DUBLIN,
In his official capacity as Corporal of Police,
National Geospatial Intelligence Agency
Police;

## CERTIFICATE OF SERVICE

AND NOW, comes Clifford A. Rieders, Esquire, Counsel for Plaintiff, and certifies that the foregoing **Brief in Opposition to Motion and Memorandum of Law With Respect to Defendants' Motion to Transfer Venue and for Partial Dismissal** has been served upon the following, this 12th day of January 2023, via ECF:

Landon Jones, Esquire, Assistant U.S. Attorney
U.S. Attorney's Office Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Email:  Landon.Jones@usdoj.gov

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

By: /s/ Clifford A. Rieders, Esq.
PA Attorney ID #20962
161 West 3rd Street
Williamsport, PA 17701
Phone: 570-323-8711
Fax: 570-323-4192
Email: crieders@riederstravis.com

39