## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY PODELL,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **No. 22-cv-3505** |
| | **:** | |
| **v.** | **:** | **JUDGE:  JOEL H. SLOMSKY** |
| | **:** | |
| **LLOYD J. AUSTIN III, et al.,** | **:** | **COMPLAINT FILED: 9/01/22** |
| | **:** | |
| **Defendants** | **:** | **Jury Trial of 12 Demanded** |

**<u>SUPPLEMENTAL BRIEFING OF PLAINTIFF JEFFREY PODELL WITH
RESPECT TO THE MOTION OF LLOYD J. AUSTIN III, ET AL.
TO CHANGE VENUE AND DISMISS</u>**

## **TABLE OF CONTENTS**

1.     Introduction……………………………………………………………………1

2.     Recent Developments……………………………………………………..5

3.     Questions Presented………………………………………………………7

4.     Venue…………………………………………………………………………8

5.     Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, et seq………24

6.     Whether Title VII preempts statutory claims………………………………………..28

7.     How Courts Have Handled, in Actuality, the Issue of Cases Containing
       Title VII and Constitutional Claims……………………………………………...32

8.     Action Against Individuals………………………………………………34

9.     Conclusion…………………………………………………………………...36

10.    Certificate of Compliance …………………………………………………… 38

11.    Certificate of Service ………………………………………………………… 39

<u>TABLE OF AUTHORITIES</u>

Cases

*303 Creative LLC v. Elenis*, 2023 U.S. LEXIS 2794 (June 30, 2023) ................................................25

*Adarand Contractors, Inc. v. Pena*, 515 U.S. at 224-225 ................................................................33

*Allen v. Becerra*, 2022 U.S. Dist. LEXIS 21989, 2022 WL 374409 (2022) ........................................32

*Allen v. Milligan*, 2023 U.S. LEXIS 2423 ........................................................................................34

*Arnold v. BLaST Intermediate Unit 17*, 843 F.2d (3d Cir. 1988) ...............................................36, 37

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ...........................................................33

*Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954)............................................................................33

*Bostock v. Clayton County*, 140 S. Ct. 1731; 207 L.Ed. 2d 218; 2020 U.S. LEXIS 3252 (June 15, 2020)
.....................................................................................................................................22, 30

*Bridges v. Astrue*, No. 12-CV-02316, 2014 WL 1281158, at *2 (E.D. Pa. Mar. 28, 2014).....................19

*Brown v. General Services Administration*, 425 U.S. 820 (1976)...................................28, 29, 30, 31

*Buckley v. Valeo*, 424 U.S. 1 (1976)...............................................................................................33

*Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)...................................................................27

*Eberhart v. Baker*, 652 F.Supp 1475, 1476 (W.D. Pa 1987) ............................................................23

*Fenico v. City of Philadelphia*, 2023 U.S. App. LEXIS 14305 (3d Cir. 2023)....................................34

*Floyd v. American Honda Motor Corporation*, 966 F.3d 1027 (9th Cir. 2020) ..................................13

*Francis v. Mineta*, 505 F.3d 266 (3d Cir. 2007).................................................................... passim

*Glacier Northwest, Inc. d/b/a Cal Portland v. International Brotherhood of Teamsters Local Union #174*,
598 U.S. ___ (2023) ..............................................................................................................33

*Groff v. Dejoy*, 600 U.S. ___ (2023), 2023 U.S. LEXIS 2790...................................................... passim

*Hall v. United States*, 556 U.S. 506 (2012) ....................................................................................13

*Harrell v. Donahue*, 638 F.3d 975 (8th Cir. 2011) ..........................................................................31

*Health and Hospital Corp. v. Talevski*, 2023 U.S. LEXIS 2421 (June 8, 2023)...................................22

*Holly v. Jewell*, 196 F. Supp. 3d 1079 (N.D. Cal. 2016)...................................................................32

*In re Udell*, 454 F.3d 180, 186 (3d Cir. 2006)................................................................................14

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 734 (1989)........................................................29, 30

*Kennedy v. Bremerton School District*, 597 U.S. ___, 2022 WL 2295034, 2022 U.S. LEXIS 3218 ..25, 32

*Kirtz v. Trans Union LLC*, 46 F.4th 159; 2022 U.S. App. LEXIS 23684 (3d Cir. August 24, 2022).........22

*Lamont v. Haig*, 590 F.2d 1124, 1128 (D.C. Cir. 1978) ...................................................................15

*Mallory v. Norfolk Southern Railway Company*, 2023 U.S. LEXIS 2786, 600 U.S. ___ (2023) .............20

*McIntire v. Wood*, 3 L.Ed 420 (1813)............................................................................................. 9

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) .......................................13, 14, 15, 20

*Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) ..........................................15

*Rine v. Imagitas, Inc.*, 590 F.3d 1215 (11th Cir. 2009) ....................................................................16

*Rowland v. Bissell Homecare, Inc.*, decided July 10, 2023, 2023, U.S. App. LEXIS 17444.......12, 13, 20

*Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) .....................................................................17

*Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013)...........................................................13

*Smith v. United States*, 2023 U.S. LEXIS 2546 (June 15, 2023)........................................................22

*Students for Fair Admissions, Inc. v. President* 2023 U.S. LEXIS 2791 (2023) ...................................33

*Tagore* v. *United States*, 735 F. 3d 324, 330-331 (2013)......................................................24, 31, 32

*Tanzin v. Tanvir*, 141 S. Ct. 486, 208 L. Ed. 2d 295, 220 U.S. LEXIS 5987 (2020)..............................32
*Temparali v. Rubin*, Civil Action No. 96-5382, 1997 WL 361019 (E.D. Pa. June 20, 1997).................19
*Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63 (1977) ........................................................ 6
*Travers v. Fed. Express Corp.*, 8 F.4th 198, 208 (3d Cir. 2021).....................................................14
*Truskey v. Perdue*, 2021 WL 9316104 (W.D. Ky. July 30, 2021)....................................................32
*Tug Allie–B, Inc. v. United States,* 273 F.3d 936, 941–42 (11ᵗʰ Cir.2001)......................................16
*Weaver v. Walgreen Co.*, 2021 WL 698206, *2 (E.D. Pa. 2021) ...................................................18
*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) ........................................................................33
*Xiaoxing Xi v. Haugen*, 2023 U.S. App. LEXIS 12784 (3d Cir. 2023) ............................................33

## Statutes

10 U.S.C. § 892 ...........................................................................................................................28
28 U.S.C. § 1391(b) (1946 ed., Supp. II), amended in Pub.L. 89-714, 80 Stat. 1111 (1966) ................. 9
28 U.S.C. § 1391(e) ....................................................................................................................20
28 U.S.C. § 1391(e)(1) ...................................................................................................7, 8, 14, 17
28 U.S.C. § 1391(e)(1)(C) ...........................................................................................................19
28 U.S.C. § 1404(a) ....................................................................................................................23
28 U.S.C.A. § 1391(e).............................................................................................................9, 10
42 U.S.C. § 1983 ........................................................................................................................22
42 U.S.C. § 2000bb-1 .................................................................................................................29
42 U.S.C. § 2000bb-3 .................................................................................................................30
42 U.S.C. § 2000e-16 .................................................................................................................29
42 U.S.C., Chapter 21, Civil Rights, Subchapter VI, Subsection (f)(3) ........................................... 7
Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) ......................................................12
Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-2725 .....................................16
Equal Employment Opportunity Act of 1972 (P.L.92-261) ...........................................................20
Federal Tort Claims Act, 28 U.S.C. § 1346.................................................................................33
Judiciary Act of 1789, 1 Stat. 73.................................................................................................17
Judiciary Act of 1887, 24 Stat. 552-553.......................................................................................17
Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ................................................................12, 13
Mandamus and Venue Act of 1962, Pub.L. No. 87–748, § 2, 76 Stat. 1748 (1962) .................7, 10, 17
Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, et seq. ................................. passim
Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ......................................................15, 20
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq...........................................passim
Uniform Code of Military Justice, 10 U.S.C. § 801, *et seq.* ..........................................................28
Voting Rights Act of 1965, P.L. 89-110 .......................................................................................34

## Other Authorities

14D Fed. Prac. & Proc. Juris. § 3825 ...........................................................................................18
1962 U.S. Code Cong. & Admin. News, pp. 2784, 2785 ...........................................................14, 18
*Cf.* Alex Reed, *The Title VII Amendments Act: A Proposal*, 59 Am. Bus. L.J. 339, 351 (2022)..............30
Department of Defense Instruction (DoD Instruction) 1300.17, (September 1, 2020) ..........................27
Executive Order 13798, 82 Fed. Reg. 21675 (May 4, 2017)............................................................26

Executive Order 13985, 86 Fed. Reg. 7009 (January 20, 2021) .......................................................... 1

H. Rep. No. 536, 87th Cong., 1st Sess. 1 (1961) ......................................................14, 18

H.R.Rep.536, 87th Cong., 1st Sess., 1; S. Rep. No.1992, 87th Cong., 2d Sess., 2 .............................17

Kampeas, R. (2023, May 17). Antisemitism is the focus at a Jewish American Heritage Month at the White House. *Jewish Telegraphic Agency*. https://www.jta.org/2023/05/17/politics/antisemitism-is-the-focus-at-a-jewish-american-heritage-month-event-at-the-white-house .............................................. 6

Memorandum From Attorney General Sessions to All Executive Departments and Agencies, Federal Law Protections for Religious Liberty, at 6-7, 10a-11a (Oct. 6, 2017), www.justice.gov/opa/press-release/file/1001891/download .........................................................................................................26

Paul R. Gugliuzza & Megan M. La Belle, *The Patently Unexceptional Venue Statute,* 66 Am. U.L. Rev. 1027, 1034 (2017)...........................................................................................................................17

S. Rep. No. 1992, 87th Cong., 2d Sess. (1962) ......................................................14, 18

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012).....................................14

T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874)15

## **Table of Exhibits**

Exhibit 1      Fact Sheet: Biden/Harris Administration Releases First-Ever U.S.
               National Strategy to Counter Antisemitism……………………………………………..5

Exhibit 2      Historical and Revision Notes to 28 U.S.C.A. § 1391(e)……………………………9

Exhibit 3      Documentation showing Pennsylvania does have a relationship with this
               matter in that personal records are stored and accessed from a site
               in Pennsylvania……………………………………………………………………..12, 22

               3.1      OPM, U.S. Office of Personnel Management, OPM.gov/Information
                        Management/Records Management
               3.2      OPM Central 9, System Name: Personnel Investigation Records
               3.3      Federal Records Center Locations, the U.S. National Archives and
                        Records Administration
               3.4      National Archives, Philadelphia Federal Records Center, U.S.
                        National Archives and Records Administration
               3.5      National Archives, Records Transferred to a Federal Records Center

Exhibit 4      Plaintiff Podell's Affidavit in opposition to the Government's Motion for
               change of venue………………………………………………………………………….23

Exhibit 5      Complaint in the case of *Kennedy v. Bremerton School District*,
               597 U.S. ___, 2022 WL 2295034, 2022 U.S. LEXIS 3218………………………..32

## 1.  **Introduction**

The Court was kind enough to provide the parties with a transcript of the motion hearing held before Your Honor Joel H. Slomsky, United States District Court Judge, on April 26, 2023 at the James A. Byrne Courthouse, Philadelphia, Pennsylvania.

The Court expressed a particular interest in the venue issue and hence that will be taken up first by Plaintiff Podell.  Thanks to the extra 30 days granted by the Court, Plaintiff has had the opportunity of performing in-depth research in connection with the venue question when the United States is a defendant and charged with discrimination based upon religion.

A brief overview of this case may be in order.

On November 22, 2022, a Second Amended Complaint was filed by Jeffrey Podell, a resident of the Eastern District of Pennsylvania and practitioner of the Jewish religion.

In a 59-page, 289 paragraph Complaint, Podell sets forth that he applied for various positions within the Department of Defense but he was required to complete the first phase of pre-employment processing on a Saturday. Notwithstanding Executive Order 13985, 86 Fed. Reg. 7009 (January 20, 2021), with respect to advancing racial equality and support for underserved communities by virtue of efforts undertaken by the federal government, the Government takes the position, in dealing with Podell, that it could not and would not offer a reasonable accommodation.

Mr. Podell's Complaint alleges employment discrimination, retaliation, violation of equal protection and due process based on membership in the legally protected class of a practitioner of the Jewish religion.  It is claimed that the Defendants have engaged in a pattern and practice of direct and/or constructive discrimination and retaliation against Plaintiff when he, an otherwise qualified applicant, on multiple occasions, sought a reasonable accommodation for an alternative testing date in order to not violate his sincerely held religious beliefs. Podell's Complaint claims that at no time did Defendants dialogue, interact, and offer Plaintiff a mutually agreeable reasonable accommodation of Plaintiff's religious requirements. Instead, asserts Podell, Defendants abdicated their responsibilities to obey and enforce the laws and regulations for the prevention of discrimination and attempted to blame each other for their failures. He further claims that key Defendants acknowledged under oath that they never grant reasonable accommodations for Saturday Sabbath observers. In addition to damages, Plaintiff seeks to change the way Defendants function in connection with reasonable accommodations for religious needs through Declaratory and Injunctive Relief.

The parties sued are Lloyd J. Austin, III, Secretary of the United States Department of Defense; Frank D. Whitworth, III, Director of the National Geospatial Intelligence Agency; Frank Kenny, Chief of Police, National Geospatial Intelligence Agency Police; Richard Weiss, Assistant Chief of Police, National

Geospatial Intelligence Agency Police; Jason Tinnin, Major of Police, National Geospatial Intelligence Agency Police; Wesley Lee Jordan, Lieutenant of Police, National Geospatial Intelligence Agency Police; Marcus Dwayne Jackson, Lieutenant of Police, National Geospatial Intelligence Agency Police; Jesse McNeil Lieutenant of Police, National Geospatial Intelligence Agency Police; Marcel Young, Lieutenant of Police, National Geospatial Intelligence Agency Police; and Larence Dublin, Corporal of Police, National Geospatial Intelligence Agency Police.

The United States of America, on behalf of all Defendants, has filed a Motion and Memorandum of Law in Support of Defendants' Motion to Transfer Venue and for Partial Dismissal.  Defendants take the position that the case should be heard not in the Eastern District of Pennsylvania where Mr. Podell lives but rather in the Eastern District of Virginia.  The Defendants also ask the Court to find that Mr. Podell failed to state a claim which relief could be granted and that Podell's claims of violation of the United States Constitution are preempted by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The Government further claims that the United States Court of Appeals for the Third Circuit precludes Podell's claim under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, et seq., although the Defendants admit that the Department of Justice is not seeking to enforce Third Circuit Authority. The Government argues that Podell failed to exhaust a hostile work environment claim,

does not state a hostile work environment claim, and that Podell failed to exhaust a claim for retaliation. It is alleged by Defendants that Podell's retaliation claim should be dismissed because he failed to allege a causal relationship between protected conduct and an adverse personnel action. Finally, The United States of America implores the Court to dismiss all Defendants except for Secretary Austin, notwithstanding claims of individual violative behaviors on the part of those other named parties.

The argument made by the Government is in contradistinction to reasonable accommodations made for a variety of other groups including Sikhs, Muslims, Christians, and the like. The Complaint relates that an EEOC investigation utilized interviews and written interrogatories which confirmed that the Department of Defense officials did not and would not abide by the requirements ensconced in the law to offer a reasonable accommodation to Mr. Podell.

The Court held lengthy argument on the Government's motion and the response of Podell's attorney, Clifford A. Rieders, Esquire, on April 26, 2023.The Court did not issue a ruling but rather indicated that it would have a transcript prepared and that the parties could respond within 30 days with further briefing if they wish.  As noted, that date was subsequently extended by the Court.

Plaintiff Podell relies upon his initial Brief in Opposition and Memorandum of Law with respect to Defendants' Motion to Transfer Venue and for Partial Dismissal, which is readily at the Court's disposal.

4

**2.    Recent Developments**

On May 25, 2023, the Biden-Harris Administration issued a national strategy to counter anti-Semitism.  Attached as Exhibit 1 hereto is a document entitled, "Fact Sheet: Biden/Harris Administration Releases First-Ever U.S. National Strategy to Counter Antisemitism."   The Government statement represents a recognition that anti-Semitism affects not only individuals but the entire Jewish community, and in fact impacts other groups as well.

A national strategy has been established to support, "the whole-of-society call to action…."  Exhibit 1, Page 2.

The Administration promises to ensure, "the strategy's effective implementation and leverage it to advance our fight against other forms of hate." Perhaps most importantly for this case, the Administration has stated as follows:

> Furthermore, the U.S. government will raise awareness on these topics both inside and outside of classroom environments, including in the workplace, in museums and libraries, and in the media.  **Federal agencies will incorporate information about antisemitic bias and discrimination and about workplace religious accommodations into their training programs.**  Additionally, the Office of Personnel Management, Equal Employment Opportunity Commission (EEOC), and Office of Management and Budget will conduct **learning sessions for agency diversity, equity, inclusion, and accessibility officers on antisemitism and related forms of discrimination,** as well as workplace religious accommodations.  (Emphasis in original).

*See* Exhibit 1.

In spite of this laudatory position taken by the United States, it apparently has not changed its position in this case, even though the Government does not

appear to contest that no reasonable accommodation was offered to Mr. Podell. The United States Attorney suggested to the Court, after the hearing, that it would be burdensome on the United States of America, Department of Defense, to accommodate Mr. Podell.

In a press release published May 17, 2023, the White House hosted "celebration of Jewish American Heritage Month". Kampeas, R. (2023, May 17). Antisemitism is the focus at a Jewish American Heritage Month at the White House. *Jewish Telegraphic Agency*. https://www.jta.org/2023/05/17/politics/antisemitism-is-the-focus-at-a-jewish-american-heritage-month-event-at-the-white-house.

On June 29, 2023, the United States Supreme Court decided the case of *Groff v. Dejoy*, 600 U.S. ___ (2023), 2023 U.S. LEXIS 2790. The Court, in a rare conciliatory interlude, was unanimous. The Court clarified what Title VII requires with respect to a reasonable accommodation of an employee in connection with the employee's religious requirements.

The Court's ruling stated as follows:

> We hold that showing more than a *de minimis* cost, as that phrase is used in common parlance, does not suffice to establish undue hardship under Title VII. *Hardison* [*Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63 (1977)] cannot be reduced to that one phrase. In describing an employer's undue hardship defense, *Hardison* referred repeatedly to substantial burdens, and that formulation better explains the decision. We therefore, like the parties, understand *Hardison* to mean that "undue hardship" is shown when a burden is substantial in the overall context of an employers *[sic]*

business. * * * This fact-specific inquiry comports with both *Hardison* and the meaning of "undue hardship" in ordinary speech.

*Hardison* is important in the context of the current argument, because it demonstrates the importance which the Court places upon reasonable accommodation in the context of religious observance, and because it is faithful to the language of Title VII and its accompanying regulatory structure.

Remedies, of the nature encompassed within *Groff v. Dejoy*, are not to be lightly disregarded based upon general notions which may be at odds with explicit statutory structure.

## 3.   <u>Questions Presented</u>

3.1   Whether Congress clearly and indisputably intended to overrule or negate the Mandamus and Venue Act of 1962, codified at 28 U.S.C. § 1391(e)(1) with respect to venue where the United States or its officers are Defendants by the enactment of 42 U.S.C., Chapter 21, Civil Rights, Subchapter VI, Subsection (f)(3), which restricted venue when the United States is a defendant in what was then the newly expanded Title VII addressing claims against the United States of America?

3.2   Whether the Religious Freedom Restoration Act is retroactively preempted and rendered meaningless by virtue of the existence of civil rights remedies pursuant to Title VII of the Civil Rights Act?

3.3     Whether Title VII of the Civil Rights Act preempts other statutory enactments providing relief to a victim of discrimination, notwithstanding that no such preemption is written into the law or even alluded to?

3.4     Whether Courts, in actuality, have addressed Title VII and constitutional claims in the same case?

3.5     Whether a cause of action should be dismissed against individuals employed by United States of America who took actions on their own initiative, and with others, to discriminate against a party based upon religion?

## 4.     <u>Venue</u>

Our provenance is with 28 U.S.C. § 1391(e)(1), which directly, explicitly addresses actions where a defendant is an officer or employee of the United States. That section reads, in its entirety, as follows:

> (1) IN GENERAL. – A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action as situated, or (C) the plaintiff resides if no real property is involved in the action.  Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

The United States, in the case at bar, seeks to avoid this explicit venue statute by claiming that a later general venue statute under Title VII applies.  With respect to the longstanding venue rule applicable to the United States of America, see Historical and Revision Notes, attached as Exhibit 2.

The legislative history of 28 U.S.C.A. § 1391(e) shows that it was intended to broaden the range of venues for suits against the federal government. Before enactment of 1391(e) in 1962, the U.S. Supreme Court had held that a writ of mandamus against the federal government had to be brought in the District of Columbia Federal Courts. *McIntire v. Wood*, 3 L.Ed 420 (1813).  Additionally, prior to enactment of §1391(e) government officers and employees could only be sued in a jurisdiction where they resided. See 28 U.S.C. § 1391(b) (1946 ed., Supp. II), amended in Pub.L. 89-714, 80 Stat. 1111 (1966). Since many government officers resided in the District of Columbia ("DC"), most actions against the government could only be brought there. Plaintiffs located far from DC therefore faced significant expenses to litigate their rights.

In response to this problem Congressman Budge introduced H.R. 10089 – the precursor to §1391(e) – in 1962. Congressman Budge said that the bill was necessary because, "as it is now, there is no opportunity for a judicial review of an action of any decision that is made by a federal office . . . because it is too expensive to come back here [to Washington D.C.] to litigate."[1] He went on to say,

---

[1] Hearings on H.R. 100899 before Subcommittee No.4 of the House Committee on the Judiciary, 86th Cong., 2d Sess., 19, 102 (May 26 and June 2, 1960) (emphasis added).

"[a]ll I am seeking to do is to have the review of [official government] actions take place in the United States District Court *where the determination was made*."[2] This intent was memorialized in a report issued by the Congressional Subcommittee responsible for writing §1391(e) as follows: "[§ 1391(e)] is designed to permit an action which is essentially against the government to be brought *locally rather than requiring that it be brought in the District of Columbia*."[3]

H.R. 10089 was passed as the Mandamus and Venue Act of 1962. Section 2 of the Act, later codified as 28 U.S.C.A. § 1391(e), provides that plaintiffs:

> may bring an action, except otherwise provided by law, in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the event or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.[4]

The Supreme Court has understood this provision to, "provide nationwide venue for the convenience of plaintiffs."[5]

Section 2000e-5, found within 42 U.S. Code: Enforcement provisions, is contained within Chapter 21, Civil Rights, subchapter VI – Equal Employment Opportunities.  Subsection (f)(3) states, in its entirety, as follows:

> (3)    Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in

---

[2] Id. (emphasis added).

[3] Id. at 2. (Emphasis added).

[4] 28 U.S.C.A § 1391(e)(parts omitted).

[5] *Stafford v. Briggs*, 444 U.S. 527, 543 (1980).

the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

The purpose of the statutory change was to assure that the United States was subject to the civil rights statute previously enacted.

The legislative evolution of Title VII's venue provision, 42 U.S.C §2000e-5(f)(3), part of the Civil Rights Act of 1964, likewise shows a Congressional intent to expand venue options for plaintiffs. The original House bill provided venue only (1) in the district in which the unlawful employment practice occurred or (2) in the district of the respondent's principal office.[6] The Senate Bill revised this, granting venue in an additional two areas: (1) where the relevant employment records are kept and (2) where the aggrieved plaintiff would have worked but for the alleged unlawful employment practice.[7] This legislative evolution demonstrates a conscious choice by Congress to expand the number of venues available to plaintiffs bringing actions under Title VII.[8]

Counsel for Mr. Podell provided to the Court at the hearing documentation showing that, notwithstanding assertions of the Government to the contrary,

---

[6] 110 Cong. Rec. 12723 (1964).

[7] Id.

[8] *Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 493, 504 (9th Cir. 2000)(finding that Title VII's legislative history demonstrates an intent to have a wide range of venue available to plaintiffs).

11

Pennsylvania does have a relationship with this matter in that personnel records are stored and accessed from a site in Pennsylvania. *See* Exhibit 3 attached hereto.

**The question with which this Court is presented is whether it was the intent of Congress in passing the Title VII subsection to overrule or negate § 1391.**

The United States Court of Appeals for the Third Circuit has very recently decided a case which parallels the current inquiry to a great degree. *Rowland v. Bissell Homecare, Inc.*, decided July 10, 2023, 2023, U.S. App. LEXIS 17444, was a consolidated appeal arising out of four (4) class actions filed in state court alleging violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"). Defendants removed the cases to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiffs moved to remand, which the Circuit Court did. The District Court determined that remand was appropriate, and the Third Circuit affirmed.

In carefully examining the statutory structure, the Court concluded that the MMWA's, "stringent jurisdictional requirements are irreconcilable with CAFA." At slip opinion p. 14. The question the Court was presented with, therefore, was which statute it should rely upon to determine the thorny jurisdictional question.

The Court's analysis was straightforward.

Furthermore, giving force to the MMWA's more specific jurisdictional requirements is mandated by the "basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a

more generalized spectrum."    At Slip Opinion p. 16, citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976).

MMWA, like Title VII, which was expanded to include the federal government, "intended to expand substantially federal court jurisdiction over class actions."  S. Rep. No. 109-14 at 43 (2005).

Most importantly, the Third Circuit relied upon case authority for the proposition that CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements.  *See Floyd v. American Honda Motor Corporation*, 966 F.3d 1027 (9th Cir. 2020).

Also cited was *Hall v. United States*, 556 U.S. 506 (2012) for the principle that: "We assume that Congress is aware of existing law when it passes legislation." .  .  .  But in *Rowland*, as in the cases cited, Congress left the MMWA undisturbed.  Likewise, in including the United States as a potential defendant under Title VII, the earlier venue statute was left "undisturbed".

Agreeing with the Government's position in this case would be tantamount to adopting the position that there was a "clear and manifest" intent to repeal 1391. *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013).

The apparent position of the Government is that the more recent venue provision in Title VII usurps the specific venue statute applying to the United States of America.

Even prior to *Rowland*, the law supported the view espoused by Plaintiff herein.

13

It is a basic principle of statutory interpretation, "that a more specific provision governs over a more general statute when there is a conflict between the two statutes." *In re Udell*, 454 F.3d 180, 186 (3d Cir. 2006). This is true "regardless of the priority of enactment." *Travers v. Fed. Express Corp.*, 8 F.4th 198, 208 (3d Cir. 2021). The principle of this "specific-general canon" is that, "the specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012).

Here, the court is asked to choose whether the venue provision governing federal defendants, 28 U.S.C. §1391(e), or the general venue provision of Title VII, 42 U.S.C. § 2000e-5(f)(3) is more specific.  Since the former was enacted specifically to remedy the issue at hand, that is, "to make it possible to bring actions against Government officials and agencies in U.S. district courts outside the District of Columbia," the federal-defendant provision is more specific. H. Rep. No. 536, 87th Cong., 1st Sess. 1 (1961); S. Rep. No. 1992, 87th Cong., 2d Sess. (1962), in 1962 U.S. Code Cong. & Admin. News, pp. 2784, 2785.

Helpfully, the Supreme Court has applied the general-specific canon in a case much like this, where one provision governs venue for a *category of defendants*, while a second statute controls venue for a *cause of action*. In *Radzanower v. Touche Ross & Co.*, the Court held that the defendant-specific venue provision of the National Bank Act was entitled to deference over the

14

general venue provision of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*. 426 U.S. 148, 154 (1976). Its reasoning is illuminating here.

As *Radzanower* explained, the reason for the general-specific rule is that, "when the mind of the legislator has been turned to the details of a subject" a more general statute should not contradict that plan. *Id.* at 153 (quoting T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed. 1874)). In that case, the defendant-specific venue provision controlled because Congress, "was focusing on the particularized problems of national banks that might be sued in the state or federal courts." *Id.* In this case the, "congressional purpose in enacting § 1391(e) [the federal-defendant provision] was indeed to broaden the number of places *where federal officials and agencies could be sued*." *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) (emphasis added); *accord Lamont v. Haig*, 590 F.2d 1124, 1128 (D.C. Cir. 1978) ("Section 1391(e) has provided specially for and, indeed, has broadened venue *vis-a-vis the federal defendants it designates . . . .*") (emphasis added).

The Committee Reports[9] and changes to draft legislation[10] demonstrate a Congressional concern for plaintiffs who often are forced to bring claims against larger and more highly resourced defendants. In both venue provisions Congress tried to "even the odds" by affording plaintiffs more venue possibilities than previously were afforded. Given this common general legislative intent, one could

---

[9] Hearings on H.R. 100899 before Subcommittee No.4 of the House Committee on the Judiciary, 86th Cong., 2d Sess., 19, 102 (May 26 and June 2, 1960).
[10] 110 Cong Rec. 12723 (1964).

argue that §1391(e) and §2000e-5(f)(3) should be read as complementary rather than conflicting (i.e., both/and instead of either/or).

In *Rine v. Imagitas*, *Inc.,* 590 F.3d 1215 (11th Cir. 2009), the Eleventh Circuit found that a specific provision did not exclude a general provision where there was not a "positive repugnancy" between the two provisions. A "positive repugnancy" is a "conflict that cannot be reconciled." *Tug Allie–B, Inc. v. United States,* 273 F.3d 936, 941–42 (11th Cir.2001). *Rine* dealt with a class action lawsuit against a media company for a violation of the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-2725 which prohibits disclosures of drivers' private information. There are 14 exemptions to this rule under the DPPA. The issue was whether a general exemption or the more specific exemption (which had an extra procedural prerequisite) applied. The Eleventh Circuit held that when two provisions do not pose a "either-or proposition" then both provisions must be given "full effect."[11] The court found that while the two provisions overlapped, an overlap did not in and of itself create an irreconcilable conflict.

In the case at bar, it is asserted that this Court could find that the venue provisions are not conflicting ("positively repugnant") but as complementary, given Congressional intent to expand venue options for plaintiffs.

Critically, subsection (e) is not a "general" statute because it was not enacted as part of the general venue statute. Venue was initially governed by the Judiciary

---

[11] Id. at 1226.

Act of 1789, 1 Stat. 73, and later narrowed by the Judiciary Act of 1887, 24 Stat. 552-553 to limit venue in federal question cases to, "the district in which the defendant was an inhabitant." *See* Paul R. Gugliuzza & Megan M. La Belle*, The Patently Unexceptional Venue Statute,* 66 Am. U.L. Rev. 1027, 1034 (2017). Since then, Congress, "has repeatedly changed the general venue statute[] [a]nd, in each instance, it has broadened venue options." *Id.* at 1037. The relevant broadening for federal defendants occurred in 1962. In that year, Congress enacted the Mandamus and Venue Act specifically to allow suits against federal defendants outside of the District of Columbia and codified that provision at 28 U.S.C. §1391(e). Mandamus and Venue Act of 1962, Pub.L. No. 87–748, § 2, 76 Stat. 744 (1962). In other words, the relevant provision here is not part of, "the general venue statute." It is part of the Mandamus and Venue Act, which was concerned solely with civil procedure for suing federal defendants.

As the Supreme Court has explained,  §1391(e), "was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia." *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971)  (citing H.R.Rep. No.536, 87th Cong., 1st Sess., 1; S. Rep. No.1992, 87th Cong., 2d Sess., 2). As both the House and Senate reports clearly stated:

> The purpose of this bill . . . is to make it possible to bring actions against Government officials and agencies in U.S. district courts outside the District of Columbia, which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the U.S. District Court for the District of Columbia.

H. Rep. No. 536, 87th Cong., 1st Sess. 1 (1961); S. Rep. No. 1992, 87th Cong., 2d Sess. (1962), in 1962 U.S. Code Cong. & Admin. News, pp. 2784, 2785.

The 1962 federal-defendant venue provision was enacted specifically to eliminate procedural and remedial obstacles to suing federal agencies and officials in their official capacity: "[This provision] is designed to permit an action which Is essentially against the United States to be brought locally rather than requiring that it be brought in the District of Columbia . . . ." House Report, *supra*, at 2.

The Government fails to recognize the distinction between the *general* venue subsection, § 1391(b)—subtitled "Venue in general" — and the defendant-specific venue provision, § 1391(e)— subtitled "Actions where defendant is officer or employee of the United States." Nor does the Government acknowledge that the federal-defendant venue provision was enacted entirely separately from the general venue statute. With those foundational errors, the Government cites a single case for its assertion that, "Title VII contains an exclusive venue provision, rendering § 1391 inapplicable." Def. Mot. at 5 (citing *Weaver v. Walgreen Co.*, 2021 WL 698206, *2 (E.D. Pa. 2021)). As is clear from the case caption naming Walgreen's as the defendant—*Weaver* did not involve a federal defendant, and the case relied on the general venue provision. *See Weaver* at *3 ("the general venue provisions of Section 1391(b) do not apply" in light of the Title VII provision) (quoting 14D Fed. Prac. & Proc. Juris. § 3825). As explained above, the federal-defendant provision was not originally part of the venue statute – it was enacted pursuant to a

separate law in 1962, precisely for the purpose of broadening venue *as to federal defendants*.

Cases from this District have held that a plaintiff may rely on either (or both) of the venue provisions in a Title VII claim against a federal defendant. *Bridges v. Astrue*, No. 12-CV-02316, 2014 WL 1281158, at *2 (E.D. Pa. Mar. 28, 2014). In that case, Judge Gardner held that: "Venue is proper pursuant to both 42 U.S.C. § 2000e–5(f)(3), and 28 U.S.C. § 1391(e)(1)(C)." *Id.* Venue was proper under the former because (1) the unlawful employment practice was alleged to be committed in Pennsylvania and (2) the plaintiff alleged the relevant employment records were kept within the Eastern District, and proper under the latter because the plaintiff resided within the Eastern District. *Id.* at *2 n.2&3. In *Temparali v. Rubin*, Civil Action No. 96-5382, 1997 WL 361019 (E.D. Pa. June 20, 1997), this Court applied the federal-defendant provision to a plaintiff's Title VII hostile work environment claim against the Secretary of the Treasury. *See* Civil Action No. 96-5382, 1997 WL 361019, at *1 (E.D. Pa. June 20, 1997) ("Venue clearly lies in this district for plaintiff's federal claim against Secretary Rubin as plaintiff resides in this district and no real property is involved in this action.").

The federal-defendant provision of § 1391(e) governs the specific issue before the Court.  Venue in this case is therefore proper in the Eastern District of Pennsylvania.

*Radzanower v. Touche Ross & Co.*, supra, as a United States Supreme Court opinion, would control over any circuit court opinion to the contrary, and is in accord with and has been followed by the Third Circuit in *Rowland*, supra.  As Mr. Justice Stewart stated:

> This case requires us to determine which venue provision controls in the event a national banking association is sued in a federal court for allegedly violating the Securities Exchange Act of 1934: the broad venue provision of the Securities Exchange Act, which allows suits under that Act to be brought in any district where the defendant may be found, or the narrow venue provision of the National Bank Act, which allows national banking associations to be sued only in the district where they are established.

*Radzanower*, factually, was the opposite situation from this case.  The later statute, in connection with venue, was held to apply because it was "impossible" to conclude that the earlier statute was partially repealed by implication.  That is precisely what the Government argument amounts to here.  While the facts are reversed in *Radzanower*, the principles established by that case are the same. There is no basis for finding that Title VII, as to its venue provision concerning the federal government, has, by implication, repealed the earlier statute.

Counsel found nothing in the legislative history that speaks to whether the § 2000e-5(f)(3) was intended to preempt other statutory bases for venue. When Title VII claims against the federal government were made available in the Equal Employment Opportunity Act of 1972 (P.L.92-261), the legislative history again does not mention 28 U.S.C. § 1391(e). More specifically, in *Mallory v. Norfolk Southern Railway Company*, 2023 U.S. LEXIS 2786, 600 U.S. ___ (2023), the

United States Supreme Court was afforded the opportunity of examining whether Pennsylvania's requirement that out-of-state companies register to do business in the Commonwealth and agree to appear in its Courts on "any cause of action" against them violates due process.  An *in personam* suit against an individual, "for injuries that might have happened anywhere" was generally considered a "transitory" action that followed the individual.  At Slip Opinion 294.  Jurisdiction and venue, in the federal system, are close cousins.  The United States Supreme Court, in looking at Pennsylvania's rule concerning a corporation's obligation to consent to jurisdiction, supports the proposition that the more broad interpretation of "attachment" to a party doing business in the state or district is likely to be respected.  The United States of America does business in every District in the country and has a considerable presence in the Eastern District, not to mention the fact that Plaintiff resides there.  It is also beyond question that when the Plaintiff dealt with the Department of Defense in this very case, and was denied a reasonable accommodation in connection with Saturday testing, he was working from his computer in Ardmore, Pennsylvania, where the United States of America, Department of Defense, responded to his outreach by reaching out to him as well.

We also know from the hearing, and it is of record, that personnel records are stored within the Eastern District of Pennsylvania, thus satisfying even the more rigid requirements of Title VII.  The court has filings of record consisting of Jeff Podell's affidavit and exhibits provided to the court at the hearing, as to where

personal records are stored, in Pennsylvania. Clerk's Exhibit List, Exhibits 1 through 5, all of which are attached hereto as Exhibit 3.

The United States Supreme Court has recognized the importance of venue to a defendant in a criminal case. *See, Smith v. United States*, 2023 U.S. LEXIS 2546 (June 15, 2023) (Constitution does not require a different outcome when a conviction is reversed because the prosecution occurred in the wrong venue and before a jury drawn from the wrong location).

It is not uncommon for statutes to be construed in a manner that effectuates remediation for a harmed party. *See Health and Hospital Corp. v. Talevski*, 2023 U.S. LEXIS 2421 (June 8, 2023) (claim under Federal Nursing Home Reform Act may be brought under 42 U.S.C. § 1983).

The law will be respected as written. *See Bostock v. Clayton County*, 140 S. Ct. 1731; 207 L.Ed. 2d 218; 2020 U.S. LEXIS 3252 (June 15, 2020) (the Court held that equal protection in Title VII clearly permits claims for homosexual and transgender people).

Statutes will not be interpreted to deny remedies , but rather to permit them where the text is clear and unambiguous. *See Kirtz v. Trans Union LLC*, 46 F.4[th] 159; 2022 U.S. App. LEXIS 23684 (3d Cir. August 24, 2022) (permitting suits for civil damages against the federal government based upon the FCRA's "plain text". At Slip Opinion p. 161.

The Court in *Eberhart v. Baker*, 652 F.Supp 1475, 1476 (W.D. Pa 1987) permitted §1391(e) to be applied in conjunction with §2000e-5(f)(3). In that case, the government defendant moved to dismiss for improper venue arguing that Title VII's venue provision only permitted venue in the District of Colorado. The Court found that 28 U.S.C. § 1404(a)[12] granted the Court discretionary power over venue in the "interests of justice." Considering the physical and financial position of the plaintiff, the Court found that it was in the best interest of justice for venue to be granted in Western Pennsylvania because there was a significant risk that the plaintiff could not bring a claim anywhere else.  Podell, unemployed, as noted in the pleadings in this case and prior briefing, would be severely handicapped if he was not able to have this case heard in the Eastern District of Pennsylvania. The Court has a right to rely upon Podell's Affidavit in satisfaction of a determination to keep venue in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Attached as Exhibit 4 is Plaintiff Podell's Affidavit in opposition to the Government's Motion for change of venue.  The Court has a right to rely upon this Affidavit in satisfaction of a determination to keep venue in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

---

[12] 28 U.S.C. 1404(a): For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

5.     **Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, et seq.**

The Government has taken a most curious position on this claim.  It relies upon *Francis v. Mineta*, 505 F.3d 266 (3d Cir. 2007) for the proposition that RFRA does not apply to blatant discrimination claims but rather is in effect preempted by Title VII of the Civil Rights Act of 1964.

The Court, in *Groff v. Dejoy*, supra, had something to say about that issue.

> At the certiorari stage, the Government argued against review by noting that Government employees receive "at least as much protection for religious-accommodation claims [under the Religious Freedom Restoration Act (RFRA)] as [under] any interpretation of Title VII." Brief in Opposition 9. Courts have not always agreed on how RFRA's cause of action—which does not rely on employment status—interacts with Title VII's cause of action, and the Third Circuit has treated Title VII as exclusively governing at least some employment-related claims brought by Government employees. Compare *Francis* v. *Mineta*, 505 F. 3d 266, 271, 49 V.I. 1147 (CA3 2007), with *Tagore* v. *United States*, 735 F. 3d 324, 330-331 (2013) (federal employee's RFRA claim could proceed even though *de minimis* standard foreclosed Title VII claim). Because Groff did not bring a RFRA claim, we need not resolve today whether the Government is correct that RFRA claims arising out of federal employment are not displaced by Title VII.

At footnote 14.

The United States Supreme Court has certainly, at least by inference, recognized that there is an issue as to whether the RFRA is displaced by Title VII, and did not unequivocally, or in any other way, state that the RFRA is displaced by Title VII.

Notwithstanding the language in *Mineta*, the United States Department of Justice itself has cast doubt on the applicability of the preemption argument.  On

the one hand, it has stated that it does not intend to argue that the RFRA does not apply where Title VII is also pled, but it seems to more than hint that this Court should nevertheless dismiss the RFRA claim.   Plaintiff believes, and thereby asserts, that it is for the proper occasion for Courts in the Third Circuit to take another look at the 2007 opinion considering the dramatic changes in the law and the rights pertaining to religious observance following cases such as *Groff, Kennedy v. Bremerton School District*, 597 U.S. ___, 2022 WL 2295034, 2022 U.S. LEXIS 3218, and *303 Creative LLC v. Elenis*, 2023 U.S. LEXIS 2794 (June 30, 2023).   These cases strongly demonstrate the predisposition of the United States Supreme Court to regard religious observance as a constitutional priority on par with any other "right" and one which is expressly spelled out in the First Amendment to the United States Constitution.

The Court, in *303 Creative LLC*, held that the First Amendment to the United States Constitution would override a state anti-discrimination law which might compel a different result.   In other words, Colorado's state law arguably would require a website designer/cakemaker to utter compelled speech contrary to her sincerely held views.   The more specific language of the First Amendment, adopted as the first in the ten Bill of Rights, would clearly be supreme over state law even though the state law may have the salutary purpose of reducing discrimination.

The value inherent in upholding the First Amendment's guarantee of the right for a citizen to practice their religion will always be paramount.  It is for this reason that the Religious Freedom Restoration Act of 1993 is consistent with recent United States Supreme Court authority, while the ambiguous position of the Government in this case and adopted by the Third Circuit in the 2007 *Mineta* case is not.

The Department of Justice's current position on the RFRA, as applied to federal employers, is that "the federal government is bound by the Religious Freedom Restoration Act of 1993 (RFRA)." Gov't Br. in Opp. Cert. at 9, *Groff v. Dejoy*, No. 22-174 (S. Ct. Nov. 28, 2022); *id.* at 16 ("federal employers like USPS are subject to RFRA"). Although, at the time of *Francis v. Mineta*, 505 F.3d 266 (3d Cir. 2007), the government maintained that Title VII preempted RFRA, "[i]n 2021, the government reconsidered its position on that question, and it now maintains that federal employees may rely on RFRA for religious employment-discrimination claims." *Id.* Since 2017, federal agencies have been obligated to provide RFRA's protections to employees **and prospective employees**. Memorandum From Attorney General Sessions to All Executive Departments and Agencies, Federal Law Protections for Religious Liberty, at 6-7, 10a-11a (Oct. 6, 2017) (emphasis added), [www.justice.gov/opa/press-release/file/1001891/download](www.justice.gov/opa/press-release/file/1001891/download). Executive Order 13798, 82 Fed. Reg. 21675 (May 4, 2017).

In other words, the Government's failure to provide a religious accommodation for Mr. Podell not only violated RFRA, but separately violated the Government's own public policy position that applied RFRA vis-à-vis federal employers.   That memorandum applied to, "all administrative agencies and executive departments in the execution of federal law." Sessions Memo at 1. The memo is an interpretative guide. However, it is entitled to a high degree of respect, if not enforcement, "to the extent that those interpretations have the power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Here, the interpretation concerning federal agencies as employers is so convincing that multiple administrations have embraced it, and the Government, together with the guidance offered by the United States Supreme Court, would indicate that the RFRA should apply even where Title VII has also been pled.   Accordingly, the Government's clear violation of the RFRA in this case runs afoul of Defendant Agency's own policies, thus representing a separate violation of the RFRA statute.

The requirements of both the First Amendment to the United States Constitution and the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb, *et seq.* are both binding on the Defendants according to the Department of Defense's self-obligatory standard.   Department of Defense Instruction (DoD Instruction) 1300.17, (September 1, 2020), *Religious Liberty in the Military Services*, available on the Directives Division Website at https//www.esd.whs.mil/DD/, Approved by: Matthew P. Donovan, Under

Secretary of Defense for Personnel and Readiness.  Theoretically, those subject to the jurisdiction of the Uniform Code of Military Justice, 10 U.S.C. § 801, *et seq.* may face criminal charges pursuant to 10 U.S.C. § 892 for failure to obey a lawful order for regulation.

The United States Government is asking this Court to sanction not only a violation of the United States Constitution, but also to transgress the Government and the Department of Defense's own recently enacted policy with respect to the viability and applicability of the Constitution and the RFRA.  Such behavior cannot be countenanced and is inconsistent with any legitimate legal argument to the contrary.

Defendant United States, in this very case, has rejected the applicability of *Francis v. Mineta*, but nevertheless asks this Honorable Court to follow *Mineta*, thus violating the Government's own professed, publicly announced policy.


**6.**     **Whether Title VII preempts statutory claims**

The United States, in denying the applicability of the RFRA and other issues in this case, including venue, would suggest that Title VII not only is preemptive with respect to venue and the RFRA, but eliminates any cause of action directly under the United States Constitution.

The Government is expected to argue that *Brown v. General Services Administration*, 425 U.S. 820 (1976) supports the notion that § 717 of the Civil

Rights Act of 1964, codified at 42 U.S.C. § 2000e-16, provides the, "exclusive judicial remedy for claims of discrimination in federal employment." A careful reading of *Brown*, however, does not extend it to preempting federal employment *religious* discrimination.

At least one more recent United States Supreme Court case has characterized *Brown*'s holding as specific to claims of racial discrimination in federal employment. In *Jett*, the Supreme Court noted that in *Brown*, "[the] Court…[held] that § 717 of Title VII constituted the exclusive remedy for allegations of racial discrimination in federal employment." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 734 (1989).

*Brown*'s rationale does not neatly apply to RFRA. *Brown* applied the principle that a, "precisely drawn, detailed statute pre-empts more general remedies." *Brown¸* 491 U.S. at 735 (quotation omitted). The RFRA is a more specific remedy than Title VII. While Title VII is specific to federal employment, RFRA *only* protects against government- imposed burdens on the free exercise of religion, rather than the other forms of discrimination that Title VII protects against. 42 U.S.C. § 2000e-16(a); 42 U.S.C. § 2000bb-1. *Brown* compared § 717 to 42 U.S.C. § 1983, finding that the former is more "precisely drawn" because of Title VII's "careful and thorough remedial scheme" that "provides for a careful blend of administrative and judicial enforcement powers." *Brown*, 425 U.S. at 833.

The RFRA does not provide for a complicated remedial scheme. *See* 42 U.S.C. §2000bb-1. *Brown*'s focus on the complexity of the remedial scheme is not a universal methodology for determining whether a statute is "precisely drawn." *Jett*'s analysis of this rule appears as focused on policy as anything else. *Jett*, 491 U.S. at 735 ("As petitioner here would have it, the careful balance drawn by the 42d Congress between local autonomy and fiscal integrity and the vindication of federal rights could be completely upset by an artifice of pleading.").

Most persuasively, especially for the current Supreme Court, the plain text of the RFRA disclaims the idea that Title VII preempts it.  Specifically RFRA, "applies to *all Federal law*, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3 (emphasis added). No such language is found in § 1983, which the *Brown* court held was displaced by Title VII.  In fact, Congress has never passed a statute that exempts itself from RFRA. *Cf.* Alex Reed, *The Title VII Amendments Act: A Proposal*, 59 Am. Bus. L.J. 339, 351 (2022) (describing the Equality Act as "the first time a bill seeking to limit RFRA's scope had been introduced in Congress").

The *Francis* rule is not widespread, has not been embraced by the Supreme Court, and has been expressly rejected by multiple presidential administrations.  In *Bostock v. Clayton County*, the Supreme Court observed that, "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal

laws, it might supersede Title VII's commands in appropriate cases." 140 S. Ct. 1731, 1754 (2020). Just this June, the Supreme Court, as we discussed earlier, left open whether plaintiffs may bring employment-based RFRA claims against the federal government. *See Groff v. Dejoy*, No. 22-174, 2023 WL 4239256, at *10 n. 14 (U.S. June 29, 2023) (citing *Francis*, noting a circuit split exists with the Fifth Circuit, *see Tagore v. United States*, 735 F.3d 324, 330–331 (5th Cir. 2013), and concluding that because the plaintiff in *Groff,* "did not bring a RFRA claim, we need not resolve today whether the Government is correct that RFRA claims arising out of federal employment are not displaced by Title VII").

*Tagore*, is not squarely on point. In that case, the plaintiff was refused permission to wear a kirpan (a Sikh ceremonial sword) with a blade long enough to be considered a "dangerous weapon" under federal law inside the federal building where she worked for the IRS. *Tagore*, 735 F.3d at 325. The district court considered the *Brown* preemption issue, and ruled that the RFRA claims against the IRS and Treasury were preempted by Title VII. 2009 WL 2605310 at *10. The Plaintiff did not appeal the dismissal of those RFRA claims. *See* Appellee brief, 2012 WL 3988386 at *14. The RFRA claim before the 5th Circuit was arguably, therefore, not an employment claim but a claim pertaining to a statute that banned certain classes of blades exceeding 2.5 inches in federal buildings. 735 F.3d at 326.

Only one other circuit court has squarely considered the RFRA issue. *Harrell v. Donahue,* 638 F.3d 975 (8th Cir. 2011) (siding with appellant in

*Francis*); *see also Truskey v. Perdue*, 2021 WL 9316104 (W.D. Ky. July 30, 2021); *Holly v. Jewell*, 196 F. Supp. 3d 1079 (N.D. Cal. 2016); *Tagore v. United States*, 2009 WL 2605310 (S.D. Tex. Aug. 21, 2009). The most accurate reading of RFRA *does* allow employment-law claims, and there appears to be majority support among current Supreme Court Justices for that position.

The importance of the Religious Freedom Restoration Act, including the necessity for a damage remedy thereunder, is well demonstrated by *Tanzin v. Tanvir*, 141 S. Ct. 486, 208 L. Ed. 2d 295, 220 U.S. LEXIS 5987 (2020), *distinguished by Allen v. Becerra*, 2022 U.S. Dist. LEXIS 21989, 2022 WL 374409 (2022).

**7.** **How Courts Have Handled, in Actuality, the Issue of Cases Containing Title VII and Constitutional Claims**

In reality, the Courts have found no difficulty with asserting both Title VII and constitutional claims.  A case in point is *Kennedy v. Bremerton School District*, 597 U.S. ___, 2022 WL 2295034, 2022 U.S. LEXIS 3218, which involved a coach who was fired for saying a prayer.  The United States Supreme Court addressed this as a First Amendment establishment clause issue.  However, the complaint in this case, attached hereto as Exhibit 5, clearly contained counts under Title VII.  *See* Count III through Count VI.

The Supreme Court, in recent years, in general, has been parsimonious in its application of preemption with respect to constitutional claims.  *See*, i.e.,

*Glacier Northwest, Inc. d/b/a Cal Portland v. International Brotherhood of Teamsters Local Union #174*, 598 U.S. ___ (2023) (tort claims not preempted by National Labor law); *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. ___, 2023 U.S. LEXIS 2791 (2023) (equal protection and due process are paramount even in juxtaposition to good faith antidiscrimination policies).  It is beyond peradventure that the requirements of the Fourteenth Amendment's Equal Protection Clause are binding on the federal government by virtue of the Due Process Clause of the Fifth Amendment, *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954); *Adarand Contractors, Inc. v. Pena*, 515 U.S. at 224-225 (citing *Bolling*, 347 U.S. at 500; *Buckley v. Valeo*, 424 U.S. 1 (1976); *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975)).

The Third Circuit, of late, has shown regard for remedies provided by the Constitution. The claimant in *Xiaoxing Xi v. Haugen*, 2023 U.S. App. LEXIS 12784 (3d Cir. 2023) had brought an action pursuant to  *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) as a result of alleged FBI misconduct.  *Bivens*, much disdained of late, was held not to provide a cause of action.  However, the Federal Tort Claims Act, 28 U.S.C. § 1346 could encompass a claim that the FBI violated the Constitution.  The discretionary function exception to the Federal Tort Claims Act was held not to bar a plaintiff from asserting the Constitution under the statutory prerogative granted by the Federal Tort Claims Act.

The U.S. Court of Appeals for the Third Circuit, in *Fenico v. City of Philadelphia*, 2023 U.S. App. LEXIS 14305 (3d Cir. 2023) held that the First Amendment claims of police officers who were disciplined for utilizing denigrating language on Facebook did not lose their constitutional rights notwithstanding the importance of protecting those disparaged by alleged police misconduct.

Finally, in *Allen v. Milligan*, 2023 U.S. LEXIS 2423, the United States Supreme Court held that the Voting Rights Act of 1965, P.L. 89-110 was said to work in tandem with the Fifteenth Amendment, which, in essence, authorized the federal government to enact an appropriate measure to address discrimination. However, the Fifteenth Amendment does not authorize race-based redistricting. The statute and the Constitution once again worked as partners, not in a preemptive manner.

## 8.   <u>Action Against Individuals</u>

The United States seeks to have this case dismissed as to individuals who acted specifically to discriminate against Mr. Podell, according to the very detailed allegations set forth in Podell's Complaint.

While the action against the individuals, acting with the course and scope of their employment, is an action against the United States, it is impossible to say at this stage of the pleadings whether the Government will attempt to exculpate itself

by indicating that the individuals acted wrongfully, without authority, or were simply "negligent". Therefore, it is believed and therefore averred that the individuals named should remain in this case until and unless discovery would dictate a different result. Perhaps at some point in time the parties can agree in the event that discovery would demonstrate that certain Defendants should not be named.

The parties would probably agree that Title VII creates a species of vicarious liability, where the "supervisory employee" is responsible for the actions of the subordinate. As noted, however, discovery will be necessary to put skin on the bones and appreciate the individual role of each actor.

We do know from the Interrogatory answers, obtained by the EEO investigation, and pled in the Complaint quite explicitly, that each of the named Defendants had a role in failing and refusing to grant or even appropriately respond to a request for a reasonable accommodation. They were part-and-parcel of a policy that Saturday sabbath observers would not and had never been accommodated, reasonably or otherwise.

Under these circumstances, it seems quite inequitable to presume that individual parties should be dismissed.

It should be noted that at this stage of the pleadings, it is impossible to discern whether there would be or should be an immunity defense, qualified or otherwise.

Discovery will assist the parties in demonstrating the parameters of the claims, including those related to retaliation and hostile work environment. Each of those causes of action are factually intensive, even in the case of an individual who has not yet become an employee of the federal government.

It is believed that the position of the Government with respect to the proper parties in this case and the causes of action asserted is premature.


9.   **Conclusion**

In the case of *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d (3d Cir. 1988), the United States Court of Appeals for the Third Circuit noted that defense had played "cat and mouse" with plaintiff's counsel. "We believe that BLaST is playing cat and mouse with the plaintiff in an intolerable effort to obstruct the payment of a meritorious judgment." At 21. To some extent, that method of litigating has been replayed in this case.

While a variety of cases have involved complaints including Title VII actions, the appellate courts and the United States Supreme Court have never had a problem deciding those cases on the basis of the United States Constitution. Never before has counsel for Podell seen the Government adopt an explicit policy, as it has with the RFRA, and then abandon it in one particular case.

While the United States certainly has the right, and perhaps even the obligation, to assert its legal positions with dispatch and integrity, arguments made

in this case have not been seen in similar litigation, especially where the facts so strongly indicate the legitimacy of a plaintiff's complaint.

In the *Arnold* cases, plaintiff's counsel, the undersigned, elected to drop Title VII in order to have a right to a trial by jury and to eliminate issues which appeared to be superfluous to the substantiality of the underlying claim.  In accord with that approach, Plaintiff would be willing to drop the Title VII claims here in order to preserve the constitutional and RFRA allegations and all of those Counts other than Title VII.  It is not the position of Plaintiff that dismissal of Title VII is right, proper or necessary, but simply that the importance of this case to sabbath observers, the Jewish community and the integrity of our professed societal values command an approach consistent with the seriousness of the claims in the *Podell* case.[13]

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

By: /s/ Clifford A. Rieders, Esq.
PA Attorney ID #20962
161 West 3rd Street
Williamsport, PA 17701
Phone: 570-323-8711
Fax: 570-323-4192
Email: crieders@riederstravis.com

---

[13]  A great deal of thanks goes to John Greil, Clinical Professor of Law, University of Texas Law and Religion Clinic, for his thoughtful suggestions and advice.  Also, to Thomas Olp at the Thomas More Society for his useful input.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY PODELL,** | : | |
| | : | |
| **Plaintiff,** | : | **No. 22-cv-3505** |
| | : | |
| **v.** | : | **JUDGE:  JOEL H. SLOMSKY** |
| | : | |
| **LLOYD J. AUSTIN III, et al.,** | : | **COMPLAINT FILED: 9/01/22** |
| | : | |
| **Defendants** | : | **Jury Trial of 12 Demanded** |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non- confidential information and documents.

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

By: /s/ Clifford A. Rieders, Esq.
PA Attorney ID #20962
161 West 3rd Street
Williamsport, PA 17701
Phone: 570-323-8711
Fax: 570-323-4192
Email: crieders@riederstravis.com

38

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY PODELL,          :

                       :

      Plaintiff,        :     No. 22-cv-3505

                       :

v.                     :     JUDGE:  JOEL H. SLOMSKY

                       :

LLOYD J. AUSTIN III, et al.,  :     COMPLAINT FILED: 9/01/22

                       :

      Defendants     :     Jury Trial of 12 Demanded

## CERTIFICATE OF SERVICE

AND NOW, comes Clifford A. Rieders, Esquire, Counsel for Plaintiff, and certifies that the foregoing **Supplemental Brief** has been served upon the following, this 21st day of July, 2023, by ECF:

Landon Jones, Esquire, Assistant U.S. Attorney
U.S. Attorney's Office/ Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Email:  Landon.Jones@usdoj.gov

          RIEDERS, TRAVIS, DOHRMANN,
          MOWREY, HUMPHREY & WATERS

          By: /s/ Clifford A. Rieders, Esq.
          PA Attorney ID #20962
          161 West 3rd Street
          Williamsport, PA 17701
          Phone: 570-323-8711
          Fax: 570-323-4192
          Email: crieders@riederstravis.com